UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
MAY 11 2011
CLERK, US DISTRICT COURT
NEWPORT NEWS VA

TATYANA A. BABAKAEVA, )
)
Plaintiff, )
)
v. )
) Civil No. 4:11-CV-78
) DEMAND FOR TRIAL BY JURY
ROBERT P. QUADROS, )
RAYMOND BACON, )
QUADROS & ASSOCIATES, P.C. )
)
Defendants. )

## COMPLAINT

Plaintiff, Tatyana A Babakaeva ("Babakaeva") brings the following Complaint against the Defendants upon knowledge as to her personal circumstances and upon information and belief as to all other matters.

### NATURE OF ACTION

1. This is an action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, civil right violation pursuant to 42 U.S.C. § 1983, and state common law torts.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction under 15 U.S.C. §§ 1692(k),(d) and 28 U.S.C §§ 1331, 1343(a)(3), and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue in this District and division is proper under 28 U.S.C. §§ 127(a),(c), 1391(a)(1),(2) in that all defendants reside, and a substantial part of the events or omissions giving rise to these claims occurred, in this judicial district and in this division.

## PARTIES

4. Plaintiff, Tatyana A. Babakaeva ("Babakaeva"), is an individual residing in Newport News, Virginia and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

5. Defendant Quadros & Associates, P.C. ("Firm") is a debt collector agency, as defined by the FDCPA, 15 U.S.C. § 1692a(6), located in Newport News, Virginia, having its principal office at 2715 Huntington Ave, Newport News, VA 23607.

6. Defendants Robert P. Quadros, Esq. ("Quadros") and Raymond B. Bacon, Esq. ("Bacon") are attorneys engaged in a business of debt collection as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## FACTS

7. Defendants represented a law firm Wilson & Wilson, P.C. ("Wilson") regarding in a dispute between Wilson and Babakaeva regarding consumer debt.

8. Defendants also represented Wilson in a dispute between Babakaeva and Wilson regarding Babakaeva's funds held by Wilson for her benefit.

9. On or about February 5, 2008 Defendants initiated a debt collection action against Babakaeva, on behalf of Wilson, in the State Court for collection of the Babakaeva's consumer debt.

10. The debt collection action was instituted, and was subsequently prosecuted, with

multiple, substantial, intentional, frequent and persistent violations of the FDCPA.

11. On August 7, 2009 Babakaeva obtained judgment against Firm for said FDCPA violations.

12. On or about March 28, 2008 Babakaeva sent a letter to defendant Quadros, in his capacity of Wilson's attorney acting as agent of Firm, requesting that Wilson pay to Babakaeva the full amount of her funds.

13. By letter dated April 4, 2008 Quadros, acting as agent of Firm, responded that the funds would be paid upon directors of Wilson returning from vacation.

14. By subsequent letter dated April 10, 2008 Quadros suggested that Wilson was holding funds in Wilson's trust account and he can not return the fund without the further order of the court.

15. Contrary to Quadros' statement, Wilson deposited Babakaeva's funds into its operating account, commingled with its own funds, and had withdrawn all or substantial part of Babakaeva's funds without Babakaeva's authorization shortly after Babakaeva entrusted funds to Wilson.

16. Quadros, acting as Firm's agent, subsequently represented to the Court that Defendants and Wilson refused to pay funds to Babakaeva because Wilson, with Defendants' assistance, were holding funds for the benefit of Schempf.

17. To defend Wilson against Babakaeva's lawful demand to return her funds, Defendants suggested to Brian H. Schempf of Jones, Blechman, Woltz & Kelly, P.C. ("Schempf") to initiate a lawsuit against a third-party, Nikolai H. Sinkine ("Sinkine"), for pre-

trial attachment of the whole amount of Babakaeva's funds held by Wilson.

18. On or about June 23, 2008 Defendants, formally acting on behalf of Schempf, filed a "Complaint for Pretrial Attachment" against Sinkine in the State Court, the Virginia Circuit Court for the city of Newport News ("Newport News Circuit Court") seeking attachment of Babakaeva's funds as property of Sinkine. Defendants named Sinkine as the sole defendant.

19. Defendants, this time acting as Schempf's counsel, willfully filed a knowingly defective attachment bond.

20. Defendants did not notify Babakaeva of the action for attachment of her funds.

21. Complaint for Pretrial Attachment falsely asserted that Schempf had a valid claim to Babakaeva's funds.

22. Actually, Schempf and Defendants knew or should have known that Schempf did not and could not have a valid claim to Babakaeva's funds.

23. On or about July 16, 2008 Defendants requested and obtained an order of the Newport News Circuit Court placing a lien on Babakaeva's funds as a property of Sinkine.

24. Defendants delivered or caused said order to be delivered to Wilson on or about July 18, 2008.

25. On or about August 6, 2008 Defendants requested and obtained order of the Newport News Circuit Court ("Attachment Order") attaching the whole amount of Babakaeva's funds as property of Sinkine.

26. Defendants delivered the Attachment Order or cause it to be delivered to Wilson on or about August 18, 2008.

4

27. Subsequently, in response to judicial inquiry, Quadros falsely represented that Wilson had never obtained the orders of the Newport News Circuit Court placing lien on and granting attachment of Babakaeva's funds held by Wilson.

28. After Babakaeva learned about the action for attachment, she intervened as a co-defendant and removed the case to the Federal Court.

29. Defendants represented both the plaintiff Schempf and the statutory co-defendant Wilson in action against Sinkine for attachment of Babakaeva's funds as property of Sinkine in the State and the Federal Courts.

30. On or about April 24, 2009 the federal Court directed Defendants to withdraw from representation of their client adversely to Babakaeva because of the conflict resulted from the FDCPA judgment in favor Babakaeva against Firm.

31. Having realized that Schempf did not have a probable cause for pre-trial attachment, substituted counsel voluntary dismissed action even before he entered appearance.

32. Subsequently, Schempf admitted, by affirmatively stating under oath, that he did not have any valid claims to Babakaeva's funds.

33. As a proximate result of the pendency of the action for attachment and of entry of the orders of the Newport News Circuit Court requested by Defendants, Babakaeva was excluded from control over her funds and was not able to exercise her property rights over the funds.

34. Babakaeva sustained damages due to loss of use of her funds, loss of interest accrued on the funds proximately caused by the defendants' prosecution of the action for

attachment, and losses due to expenses incurred in defending in the attachment action.

35. Although Defendants were disqualified in the Federal Court for the FDCPA violations they committed in prosecuting the State debt collection action, they continued to represent Wilson in that debt collection action.

36. In numerous occasions, Quadros communicated to Babakaeva his intention to pursue criminal prosecution of Babakaeva in retaliation for the FDCPA judgment that Babakaeva obtained against Firm.

37. On or about June 8, 2010 Quadros, acting as agent of Firm, prepared, endorsed and delivered to the Court a draft order finding Babakaeva in criminal contempt of Court ("Contempt Order").

38. Quadros did not serve on Babakaeva an accurate copy of the draft order which included finding of Babakaeva's being in criminal contempt of Court.

39. Quadros requested entry of the Contempt Order and requested waving of requirement for Babakaeva's signature on the draft of such Order.

40. When Babakaeva learned about the Quadros' request for Contempt Order, Babakaeva filed with the Court her objections to the draft Contempt Order, and served her objections on Quadros.

41. On the day of hearing on entry of Contempt Order pursuant to Quadros' request, the trial judge instructed Babakaeva that she did not have to appear.

42. Acting together, Quadros and the judge disregarded the fact that Babakaeva raised her objections, caused the Contempt Order entered without noticing Babakaeva's objections and

with waiving requirement for Babakaeva's signature.

43. No service of process for criminal contempt of Court was served on Babakaeva, Babakaeva was not given opportunity to defend in proceedings for criminal contempt of Court, was not given opportunity to be heard on the matter of criminal contempt of Court, and no proceedings for Criminal contempt of Court were ever initiated.

44. Quadros and judge knew that the Court had no personal and subject matter jurisdiction over the cause of action for Babakaeva's purported criminal contempt of Court.

45. Quadros and judge knew that there was no probable cause whatsoever for charging Babakaeva for criminal contempt of Court.

46. Quadros and judge had actual knowledge that Babakaeva was not served by process for proceedings for criminal contempt of Court, was not given opportunity to defend in proceedings for criminal contempt of Court, was not given opportunity to be heard on the matter of criminal contempt of Court, and no proceedings for Criminal contempt of Court were ever initiated.

47. Quadros and judge had actual knowledge that entry of Contempt Order violated Babakaeva's constitutionally protected due process rights.

48. Upon Babakaeva's protestation Contempt Order entered on June 29, 2010, the Court vacated the finding of contempt and noted the complete absence of probable cause.

49. As a proximate result of entry of Contempt Order Babakaeva sustained special injury of being falsely criminally convicted for contempt of Court for which she was not actually guilty.

50. Babakaeva additionally sustained monetary damages by incurring expenses necessarily expended in proceedings for vacating Contempt Order.

## CAUSES OF ACTION

### COUNT I
### FDCPA violations
### (Against Defendants Robert P. Quadros and Quadros and Associates P.C.)

51. Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

52. Defendant violated 15 U.S.C. § 1692e(7) by communication to trial judge, in order to disgrace Plaintiff, with a correspondence which included false implication about Plaintiff's criminal contempt of Court.

53. Defendant violated 15 U.S.C. § 1692f generally, which prohibits unfair or unconscionable means to collect or attempt to collect any debt, by requesting an Order finding Plaintiff in criminal contempt of Court without probable cause, giving Plaintiff notice and/or opportunity to defend.

54. Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiff.

55. Plaintiff sustained monetary damages proximately caused by Defendants' willful malicious acts that illegally caused Plaintiff to be found in criminal contempt of Court.

56. Defendants, Robert P. Quadros and Quadros and Associates, P.C., are liable to Plaintiff for actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in the amount of $420.00 and for additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $3,000.00, and

costs expended in prosecuting this action 15 U.S.C. § 1692k(a)(3).

## COUNT II
### Malicious use of process
### (Against all defendants)

57.  Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

58.  Defendants initiated, or caused to be initiated, an action for pretrial attachment of Babakaeva's property.

59.  No probable cause for attachment existed.

60.  In institution and prosecuting the attachment lawsuit, Defendants' actions and tactics were frivolous, harassing, and conducted in bad faith in that Defendants intentionally and knowingly sought attachment without probable cause, failed to name Babakaeva as a defendant, represented both plaintiff and co-defendant, and purposefully posted knowingly defective bond.

61.  Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiff.

62.  As a proximate result of Defendants' willful and malicious conduct in instituting and prosecuting attachment action, Babakaeva sustained reasonably foreseeable damages due to loss of property rights and incurring costs in defending lawsuit for attachment.

63.  Defendants are liable to Plaintiff for compensatory damages in the amount of $15,378.79 pursuant to common law of Virginia. Defendants are also liable to Plaintiff for punitive damages in an amount of $350,000.00.

## COUNT III
### Abuse of process
### (Against all Defendants)

64. Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

65. Defendants initiated, or caused to be initiated, an action for pretrial attachment of Babakaeva's property as a property of another.

66. In instituting and prosecuting action for attachment against Sinkine, Defendants pursued the ulterior purpose to deprive Babakaeva from exercising her property rights.

67. Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiff.

68. As a proximate result of Defendants' intentional and malicious conduct in instituting and prosecuting action against Sinkine for attachment of Babakaeva's property as property of Sinkine, Babakaeva sustained reasonably foreseeable special damages due to loss or injury to her property rights and due expenses incurred in defending in that action.

69. Defendants are liable to Plaintiff for compensatory damages in the amount of $15,378.79 pursuant to common law of Virginia. Defendants are also liable to Plaintiff for punitive damages in an amount of $350,000.00.

## COUNT IV
### Conversion
### (Against all Defendants)

70. Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

71. Defendants, and/or Defendants agents/representatives acting under direction of Defendants, intentionally and maliciously and with intent of conversion initiated or/and induced to initiate legal process and asserted claims to Plaintiff's property disguising the claims as third-party claims against another, with actual or constructive knowledge that such claims cannot be sustained, and with willfully and maliciously posting a defective attachment bond with having actual of constructive knowledge of the defect.

72. Defendants used the orders of the court issued in the attachment case to exercise unauthorized dominion and control over, and converted in part or in whole for the use of their peers, Plaintiff's property at Plaintiff's expense and detriment. Defendant's exercise of dominion and control over Plaintiff's property was to the exclusion and defiance of Plaintiff's property rights.

73. Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiff.

74. As a proximate result thereof, Plaintiff sustained damages, including reasonably foreseeable damages from loss of use of the property and from expenses incurred in defending the attachment lawsuit.

75. Defendants are liable to Plaintiff for compensatory damages in the amount of $15,378.79 pursuant to the common law of Virginia. Defendants are also liable to Plaintiff for punitive damages in an amount of $350,000.00.

## COUNT V
## Malicious prosecution
### (Against all Defendants)

76. Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

77. Defendants Robert P. Quadros and Quadros and Associates P.C. requested, and caused to be entered, a court order finding Plaintiff in criminal contempt of Court.

78. No probable cause for charge of contempt existed, and Defendants knew that no probable cause for charge of contempt existed.

79. In prosecuting the charge for contempt, Defendants' actions and tactics were frivolous, harassing, and conducted in bad faith in that Defendants intentionally and knowingly sought entry of contempt order without probable cause, failed to give proper notice to Babakaeva and engaged in *ex parte* communication with the Court.

80. The action for contempt was terminated favorably to Babakaeva.

81. Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiff.

82. As a proximate result thereof, Plaintiff sustained damages, including reasonably foreseeable damages, including special injury of being falsely criminally convicted, and pecuniary losses necessarily expended in proceedings for vacating Contempt Order.

83. Defendants are liable to Plaintiff for compensatory damages in the amount of $420.00 pursuant to common law of Virginia. Defendants are also liable to Plaintiff for punitive damages in an amount of $350,000.00.

## COUNT VI
## Civil right violation
### (Against Defendants Robert P. Quadros and Quadros and Associates P.C.)

84. Plaintiff herein incorporates by reference all prior paragraphs as if they were set forth here in full.

85. Defendants Robert P. Quadros and Quadros and Associates P.C. requested, and caused to be entered, a court order finding Plaintiff in criminal contempt of Court.

86. No probable cause for charge of contempt existed, and Defendants and the trial judge knew that no probable cause for charge of contempt existed.

87. Defendants and the trial judge knew that no notice of proceeding for contempt was served on Plaintiff, that Plaintiff was not given opportunity to prepare defense and to be heard on the matter of charge for contempt.

88. In prosecuting the charge for contempt, Defendants' acted, in *ex parte* manner, in consort with the trial judge, with the purpose to procure entry of the Contempt Order without probable cause, without notice of proceedings, in absence of personal and subject matter jurisdiction, without conducting proceedings on charge for contempt, without giving Plaintiff opportunity to defend and/or to be heard, and with intentionally failing to note Plaintiff's objections and waiving requirement for Plaintiff's signature.

89. As a proximate result of entry of Contempt Order Plaintiff sustained special injury to her constitutionally protected due process rights and due to being falsely convicted in criminal contempt for which she was not actually guilty.

90. Plaintiff demands award of damages for civil right violations committed by

Defendants in the amount of $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tatyana A. Babakaeva, demands judgment against Defendants Robert P. Quadros, Raymond B. Bacon and Quadros and Associates P.C., jointly and severally, as follows:

A. For appropriate compensatory damages in the amount of:

(i) Four Hundred Twenty Dollars ($420.00) on Counts I and V;

(ii) Fifteen Thousand Three Hundred Seventy-Eight Dollars and Seventy-Nine Cents ($15,378.79) on Counts II, III, IV;

B. For appropriate additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount Three Thousand Dollars ($3,000.00) on Count I;

C. For appropriate punitive damages in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) on Counts II, III, IV and V;

D. For special damages in the amount of One Million Dollars ($1,000,000.00) on Count VI.

E. For costs pursuant to 28 U.S.C. § 1920 and 15 U.S.C. § 1692k(a)(3); and

F. Any other relief that Plaintiff shows herself to be justly entitled.

## DEMAND FOR TRAIAL BY A JURY

Plaintiff hereby demands trial by a jury.

Respectfully submitted,

*Tatyana Babakaeva*
Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 249-3072