**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk-Newport News Division**

| | | |
|---|---|---|
| **TATYANA A. BABAKAEVA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.: 4:11-cv-78** |
| | : | |
| **ROBERT P. QUADROS, ESQ.** | : | |
| **RAYMOND BACON, ESQ.,** | : | |
| **QUADROS & ASSOCIATES, P.C.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW, Robert P. Quadros, Raymond Bacon and Quadros & Associates, P.C. (collectively, "Defendants"), by and through the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and E.D. Va. Local Rule 56 and file this Memorandum in Support of their Motion for Summary Judgment with respect to Plaintiff's Complaint.  In support thereof, Defendants state as follows:

## I.    INTRODUCTION

This case is the latest in a series of lawsuits in which Plaintiff, Tatyana Babakaeva ("Plaintiff") has been involved, all revolving around the same nucleus of operative facts: Plaintiff's divorce proceedings, funds placed in escrow from the sale of the marital residence, and the attempted collection of legal fees incurred by Plaintiff and her ex-husband during their divorce.  This particular matter involves the law firm of Quadros & Associates, P.C., and employees, Robert P. Quadros, Esquire, ("Mr. Quadros") and Raymond Bacon ("Mr. Bacon"), who were at all times, acting within the scope of their employment (collectively, the "Firm"). Plaintiff's allegations center around two lawsuits the Firm handled.  The first lawsuit involved a breach of contract case filed by the Firm on behalf of Paul Wilson and his firm, Wilson &

Wilson, P.C. (collectively "Wilson"), who had represented Plaintiff for a short time in her divorce proceedings.   In early 2008, some six months after the Decree of Divorce was entered by the Hampton Circuit Court, Wilson retained the Firm to file suit against Plaintiff for unpaid legal fees. The suit was originally filed in the Hampton General District Court, was appealed by Plaintiff to the Hampton Circuit Court and ultimately transferred to the Newport News Circuit Court.  The case was heard by Judge Fisher and was styled <u>Wilson & Wilson, P.C. v. Tatyana Babakeava</u> Case No.: CL0900448V-04 (the "debt collection case").  The second lawsuit involved a Complaint for Pretrial Attachment filed by the Firm on behalf of Bryan Schempf ("Schempf") and his firm, Jones, Blechman, Woltz & Kelly, P.C. ("Jones Blechman"), who had represented Plaintiff's ex-husband, Nikolai Sinkine ("Sinkine") in the divorce proceedings.  In June 2008, Jones Blechman retained the Firm to recover from Sinkine its unpaid legal fees.  The initial proceeding, a Complaint for Pretrial Attachment, was filed in the Newport News Circuit Court on June 23, 2008 and was styled <u>Jones Blechman, Woltz & Kelly, P.C. v. Nikolai I. Sinkine</u>, Case No.: CL0801064V-04 (the "Complaint for Pretrial Attachment").

In terms of the Complaint, Count One, Count Five, and Count Six all relate specifically to the alleged conduct of Defendants during the proceedings in the debt collection case.  Count Two, Count Three and Count Four all relate specifically to Defendants' alleged conduct in connection with the Complaint for Pretrial Attachment.  Plaintiff has not, and cannot, present evidence that Defendants violated the Fair Debt Collection Practices Act, violated her civil rights, converted her funds, maliciously prosecuted her, maliciously caused the Complaint for Pretrial Attachment to issue or improperly used the Complaint for Pretrial Attachment after it was issued.  Summary judgment is warranted on all counts.

## II.  <u>STATEMENT OF MATERIAL UNDISPUTED FACTS</u>

1.      On or about April 13, 2010, Wilson & Wilson. P.C. through its attorney, Robert

P. Quadros, filed a Motion to Quash Subpoenas and For Sanctions against Tatyana Babakaeva in

Case No.: CL0900448V-04, <u>Wilson & Wilson, P.C. v. Tatyana Babakeava</u>.  Pl.'s Resp. to

Quadros' Req. Admis. No. 1A and 7, a copy of which is attached hereto as Exhibit A.

2.      The Motion to Quash Subpoenas and For Sanctions was related solely to the

deposition of Cecelia Nguyen, an employee of Quadros & Associates.  Pl.'s Resp. to Quadros'

Req. Admis. No. 1A, Pl. Dep. at 108:8 to 108:21 and 109:3 to 109:6.  A copy of the complete set

of relevant pages of Plaintiff's deposition transcript are attached hereto collectively as Exhibit B.

3.      The Final Pre-Trial Hearing in Case No.: CL0900448V-04, <u>Wilson & Wilson,</u>

<u>P.C. v. Tatyana Babakaeva</u> was held on April 15, 2010.  Plaintiff was present in the Courtroom

and the Motion to Quash Subpoenas and For Sanctions was heard. Judge Fisher found that

Plaintiff should be sanctioned for her attempt to take the deposition of an employee of Quadros

& Associates, but withheld finding on the amount of the sanctions.  Pl. Dep. at 111:22 to 111:24,

111:12 to 111:15, Pl.'s Resp. to Quadros' Req. Admis. No. 11, 12, and 13.

4.      During the Final Pretrial Hearing, Mr. Quadros did not mention criminal

contempt or contempt generally.  Pl. Dep. at 110:21 to 110:25 and 111:1 to 111:3.

5.      During the hearing on the Motion to Quash Subpoenas and For Sanctions, Judge

Fisher specifically referred to Virginia Code Section §8.01-271.1. Pl.'s Resp. to Quadros' Req.

Admis. No. 17.

6.      The trial in Case No.: CL0900448V-04, <u>Wilson & Wilson, P.C. v. Tatyana</u>

<u>Babakaeva</u> was held on April 29, 2010.   Plaintiff was present.  Judge Fisher determined that the

amount of the fine on the Motion to Quash Subpoenas and For Sanctions would be $500.00 and

directed Mr. Quadros to prepare the Order.  Pl.'s Resp. to Quadros' Req. Admis. No. 21 and 22,

Pl. Dep. at 113:8 to 113:9 and 114:23 to 114:25.

7. During the trial, there was no discussion of contempt or criminal proceedings and no arguments were made by Mr. Quadros regarding Plaintiff's punishment. Pl. Dep. at 114:14 to 114:21.

8. The proposed judgment order contained the wording "contempt of court and a sanction of $500.00." Pl.'s Resp. to Quadros' Req. Admis. No. 1D

9. Judge Fisher sent a letter to Quadros dated May 17, 2010 on which Plaintiff was copied. The letter enclosed an unpublished opinion from the Supreme Court of Virginia and provided direction on the preparation of the judgment order. Pl.'s Resp. to Quadros' Req. Admis. No. 1E, 1F, Pl. Dep. 117:8 to 117:25.

10. In response to Judge Fisher's letter, Mr. Quadros revised the proposed judgment order to include specific language. Pl. Dep. at 118:11 to 118:25 and 119:1 to 119:3.

11. Plaintiff eventually signed the revised judgment order and sent it to the Court, but did not appear on the hearing date because she was advised by the Court that it was not necessary to appear. Pl. Dep. at 121:8 to 121:25.

12. When Plaintiff received her copy of the judgment order which had been inadvertently entered by the Court without her signature, she took exception to the judgment order because it did not reflect her objection. Pl.'s Resp. to Quadros' Req. Admis. No. 1H, Pl. Dep. at 123:23 to 123:25 and 124:1 to 124:9.

13. Plaintiff filed a Motion to Reconsider and Judge Fisher subsequently prepared his own Amended Judgment Order which reflected that the sanctions against Plaintiff were imposed pursuant to Virginia Code §8.01-271.1 for her harassment and unnecessary delay in attempting to set a deposition for which there was simply no basis. Pl.'s Resp. to Quadros' Req. Admis. No. 1I, Pl. Dep. at 128:15 to 128:18.

14.     The Amended Judgment Order also indicated that Plaintiff was advised of the basis for the sanctions in open court on the record and that it was not intended to be a citation for contempt under Virginia Code §18.2-456 or any other code section.  Pl.'s Resp. to Quadros' Req. Admis. No. 1I.

15.     In terms of the sanction imposed by Judge Fisher, Plaintiff was not being punished for misbehavior in the presence of the court, or for violence of threats of violence to a judge or officer of the court, a juror, a party or a witness, or for misbehavior in the presence of the Court, or for violence or threats of violence, or for improper or insulting language, or for disobedience or resistance of an officer of the court.  Pl. Dep. at 129:16 to 129:18 and 130:3 to 130:15.

16.      No contempt charges have been brought against Plaintiff and the Court did not consider contempt charges against Plaintiff.  Pl.'s Supp. Resp. to Quadros' Int. No. 1, a copy of which is attached hereto as Exhibit C.

17.     The Court did not conduct any proceedings in trial in open court on charges for contempt and never announced a ruling with a conviction of contempt. Pl.'s Supp. Resp. to Quadros' Int. No. 1.

18.     When the marital home was sold in April 2007, Plaintiff and Sinkine agreed to put the remaining proceeds from the sale, a total of $92,291.07, into a trust account with the law firm of Wilson & Wilson, P.C.  Pl. Dep. at 44:16 to 44:20 and Schempf Decl.  at ¶8, a copy of which is attached hereto as Exhibit E.

19.     The Decree of Divorce was entered by the Hampton Circuit Court on June 19, 2007.  At the time, matters of equitable distribution were still in dispute.  Pl.'s Resp. to Quadros' Req. Admis. No. 1M and Schempf Decl. at ¶11.

20. Wilson was directed by the Hampton Circuit Court to hold the proceeds from the sale of the marital residence "until further Order of the Court." Pl.'s Resp. to Quadros' Req. Admis. No. 1M and Schempf Decl. at ¶11.

21. Wilson had authority to hold the escrowed funds. He had obtained the funds with Plaintiff's written consent, and he retained the funds pursuant to a valid court order. See Babakaeva v. Wilson, Case No.: 4:09-cv-00058-RAJ-FBS, Docket No.: 99, Dismissal Order at 3.

22. During his representation, Mr. Sinkine and the law firm of Jones, Blechman Woltz & Kelly, P.C. reached an agreement whereby the firm would be paid from his share of the net equity in the marital residence, once sold. Schempf Decl. at ¶4.

23. During the pendency of the divorce, Mr. Sinkine and Babakaeva were unable to reach an agreement as to the distribution of the proceeds held by Wilson. However, Mr. Sinkine believed he was entitled to approximately $54,984.88 of the proceeds held by Wilson because a portion of this amount represented repayment of his separate contribution to the purchase of the house and a credit because he had made the monthly mortgage payments, additional principal payments and utility payments. Schempf Decl. at ¶9;

24. Based on the language in the Decree of Divorce and his review of the transcript of the May 2007 hearing, Schempf was of the opinion that the Hampton Circuit Court retained jurisdiction over the equitable distribution issues. Schempf Decl. at ¶12.

25. During his representation and thereafter, Schempf was never advised by Mr. Sinkine that he was disclaiming, surrendering or otherwise abandoning his claim to any of the proceeds held by Wilson. Schempf Decl. at ¶10.

26. Based on his representation of Mr. Sinkine, Schempf believed that Mr. Sinkine was entitled to at least half, if not more, of the proceeds from the sale of the marital residence which would fully cover his legal expenses. Schempf Decl. at ¶10.

27.     On or about March 7, 2007 and again on January 18, 2008, in order to protect the Firm's interests, Schempf filed a Notice of Charging Lien in the divorce proceedings pursuant to Virginia Code §54.1-3932.  Schempf Decl.  at ¶¶ 6, 13.

28.     On or about January 18, 2008, Schempf filed a Petition to Enforce Attorney's Charging Lien. Schempf Decl.  at ¶14.

29.     The hearing on the Petition to Enforce Attorney's Charging Lien which was scheduled for February 28, 2008 was removed from the Hampton Circuit Court docket solely because Bryan Schempf had received the Special Appearance Objecting to Jurisdiction filed by counsel for Ms. Babakaeva less than 24 hours prior to the hearing and there were other options available to pursue Mr. Sinkine for repayment of his legal fees.  Schempf Decl.  at ¶17.

30.     Based on the actions of Mr. Sinkine and Ms. Babakaeva, Schempf had sufficient reason to believe that the proceeds held by Wilson were in jeopardy pursuant to Virginia Code §8.01-534 and accordingly, requested that Quadros & Associates, P.C. proceed with filing a Complaint for Pretrial Attachment. Schempf Decl.  at ¶19.

31.     In a letter dated March 28, 2008, Ms. Babakaeva and Mr. Sinkine indicated that they had not reached a settlement agreement which would resolve the dispute over the division of the proceeds held by Wilson.  Schempf Decl.  at ¶18.

32.     On or about June 23, 2008, a Complaint for Pretrial Attachment was filed in the Circuit Court for the City of Newport News to recover from Mr. Sinkine the legal expenses incurred during the course of his representation in his divorce.  The only property sought to be subjected to the attachment was Mr. Sinkine's interest in the proceeds from the sale of the marital residence and held in escrow by Wilson. Schempf Decl.  at ¶20.

33.     At no point in time was Schempf or his firm attempting to access any proceeds and/or property that rightfully belonged to Ms. Babakaeva.  Schempf Decl.  at ¶21.

34.     Schempf understood that if a court determined otherwise with regard to the apportionment of the proceeds, then the Firm would not be able to recover from the proceeds held by Wilson.   Schempf also understood that that it would be necessary to first obtain a judgment against Mr. Sinkine to perfect any lien.  Schempf Decl.  at ¶21.

35.      Schempf believed that all the statutory requirements for the filing of the Complaint for Pretrial Attachment were met.  Schempf Decl.  at ¶22.

36.     Schempf believed that the bond filed in the Complaint for Pretrial Attachment was proper and complied with all statutory requirements. Schempf Decl.  at ¶23.

37.     There was no ulterior purpose in filing the Complaint for Pretrial Attachment. There was absolutely no reason to prevent Ms. Babakaeva from eventually obtaining whatever interest she had in the proceeds held by Wilson.  Schempf Decl.  at ¶25.

38.     The Complaint for Pretrial Attachment was removed to the United States District Court by Ms. Babakaeva.  After a year of litigation, based upon advice of counsel, the Complaint for Pretrial Attachment was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  The case was not dismissed for any reasons other than the fact that a simple state court action ended up in federal court and it was costing more money than it was worth to pursue the matter.  Schempf Decl.  at ¶27.

39.     On July 14, 2010, a judgment in the amount of $31,408.88 (the amount of Mr. Sinkine's outstanding legal expenses owed to Jones, Blechman, Woltz & Kelly, P.C.) plus costs of $239.00 was entered against Mr. Sinkine in favor of Jones, Blechman, Woltz & Kelly, P.C. To date, the judgment has not been paid.  Schempf Decl.  at ¶28.

40.     After the Decree of Divorce was entered, the Hampton Circuit Court issued no further Orders with respect to the funds held in Escrow by Wilson & Wilson until at his own initiative and expense, Paul Wilson filed a Complaint of Interpleader in late fall 2009.

Thereafter, the Hampton Circuit Court issued an Order in March 2010 disbursing the proceeds from the sale of the marital residence to Tatyana Babakaeva.  Wilson Decl.  at ¶11, as copy of which is attached hereto as Exhibit F.

41.     Wilson first suggested that the funds be placed in an interest bearing account and that he be relieved of the responsibility for maintaining the funds, but receiving no response, eventually filed a Complaint of Interpleader in the Hampton Circuit Court.  Wilson Dec. at ¶¶10-11.

42.     Wilson did not agree to protect Schempf's attorney lien interest and Schempf never made such a request to Wilson.  Wilson Decl. at ¶12.

43.     On or about March 29, 2010, the Hampton Circuit Court Clerk tendered to Tatyana Babakaeva a check in the amount of $92,564.70, which check was negotiated by Plaintiff.  Pl.'s Resp. to Bacon Req. Admis. No. 17 and 18.

### III.     LEGAL ARGUMENT

### A.     Choice of Law

With the exception of Plaintiff's claim for a violation of the Fair Debt Collection Practices Act and her claim for a violation of her civil rights, the law of Virginia should be applied in this case, as this matter involves a controversy between private citizens and does not affect in any way contracts or commercial paper or other interests of the United States.  See Erie Co. v. Tompkins, 304 U.S. 604, 58 S. Ct. 817 (1938) ("[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. (internal citations omitted)).

### B.     Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.  Id. at 255.  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### C.      Defendants Did Not Violate The Fair Debt Collection Practices Act

In Count One of her Complaint, Plaintiff complains that Defendants Robert P. Quadros and Quadros and Associates, P.C. (herein "Defendants") violated 15 U.S.C. 1692e(7) and 15 U.S.C. §1692f, specific provisions of the Fair Debt Collection Practices Act ("FDCPA").

The FDCPA seeks to protect consumers from abusive, deceptive and unfair debt collection practices.  Creighton v. Emporia Credit Service, 981 F. Supp. 411, 414 (E.D. Va. 1997).  Generally speaking, section 1692 of the FDCPA prohibits the use of any false, deceptive or misleading representation or means in connection with the collection of any debt.  See 15 U.S.C. §1692.  Specifically, section 1692e(7) specifically prohibits a debt collector from "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. §1692e(7).  Section 1692f specifically prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C.§1692f.

A *prima facie* case for violation of the FDCPA requires plaintiff to show that: (1) the plaintiff is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt

is a "debt collector" within the meaning of the statute; (3) the defendant has violated by act or omission a provision of the FDCPA (emphasis in original).  Creighton 981 F. Supp. at 414. However, the threshold inquiry for a FDCPA claim is whether the alleged conduct was used in an attempt to collect a "debt." Vaile v. Willick, 2008 U.S. Dist. LEXIS 5111 at 5 (W.D. Va. 2008); see also Mabe v. G.C. Servs. Ltd. P'ship, 32 F.3d 86, 88 (4th Cir. 1994) ("a threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a debt.").

  During the pendency of the debt collection case, Plaintiff scheduled the deposition of Cecilia Nygyen, a clerical employee of Quadros & Associates.  Believing the deposition to be improper and harassing, in response, Mr. Quadros filed a Motion to Quash Subpoenas and for Sanctions.  During the Final Pre-Trial Hearing on April 15, 2010 in the debt collection case, Judge Fisher determined that Plaintiff should be sanctioned for her attempt to take the deposition of an employee of Quadros & Associates, but withheld finding on the amount of the sanctions. Ex. B at 111:22 to 111:24, 111:12 to 111:15 and Ex. A at No. 11, 12, and 13.   At the trial, Judge Fisher determined that the amount of the fine on the Motion to Quash Subpoenas and For Sanctions would be $500.00.  Ex. A at No. 21 and 22 and Ex. B at 113:8 to 113:9 and 114:23 to 114:25.  There was no discussion of contempt or criminal proceedings and no arguments were made by Mr. Quadros regarding Plaintiffs punishment. Ex. B at 114:14 to 114:21.  Mr. Quadros was instructed to prepare the Order.  Id.  Plaintiff received the proposed judgment order enclosed in a letter dated May 10, 2010 from Mr. Quadros on or about May 12, 2010.  Ex. A at No. 1C, 1D and Ex. B at 116:14 to 116:16.  The proposed judgment order contained the wording "contempt of court and a sanction of $500.00."   Ex. A at No. 1D.   Plaintiff signed the proposed judgment order noting her "objection" and returned it to Quadros on or about May 17, 2010. Pl.'s Resp. to Quadros' Req. Prod. Doc. Bate No. 122 (a copy of which is attached hereto as

Exhibit G), see also Ex. B. at 116:5 and 116:15 to 116:16.   Judge Fisher sent a letter to Quadros

dated May 17, 2010 on which Plaintiff was copied.  The letter enclosed an unpublished opinion

from the Supreme Court of Virginia and provided direction on the preparation of the judgment

order.  Ex. A at No. 1E, 1F and Ex. B 117:8 to 117:25.  In response to Judge Fisher's letter, Mr.

Quadros revised the proposed judgment order to include specific language.  Ex. B at 118:11 to

118:25 and 119:1 to 119:3.  Plaintiff eventually signed the revised judgment order and sent it to

the Court, but did not appear on the hearing date because she was advised by the Court that it

was not necessary to appear.  Ex. B at 121:8 to 121:25.  When Plaintiff received her copy of the

judgment order which had been inadvertently entered by the Court without her signature, she

took exception to the judgment order because it did not reflect her objection.  Ex. A at No. 1H

and Ex. B. at 123:23 to 123:25 and 124:1 to 124:9.  Plaintiff filed a Motion to Reconsider and

Judge Fisher subsequently prepared his own Amended Judgment Order[1] which reflected that the

sanctions against Plaintiff were imposed pursuant to Virginia Code §8.01-271.1 for her

harassment and unnecessary delay in attempting to set a deposition for which there was simply

no basis.  Ex. A at No. 1I and Ex. B at 128:15 to 128:18.  The Amended Judgment Order also

indicated that Plaintiff was advised of the basis for the sanctions in open court on the record and

that it was not intended to be a citation for contempt under Virginia Code Section 18.2-456 or

any other.  Ex. A at No. 1I.

      Plaintiff first asserts that Defendants violated 15 U.S.C. 1692e(7) "by communicating to

a trial judge, in order to disgrace Plaintiff, with a correspondence which included a false

implication about Plaintiff's criminal contempt of Court."  Compl. at ¶52.  Plaintiff is

specifically referring to the proposed judgment order prepared by Mr. Quadros which contains a

reference to "contempt of court and sanction of $500.00."  Ex. B at 115:13 to 115:18.  Plaintiff

---

[1] A judgment in the amount of $2,583.50 was entered against Plaintiff on July 19, 2010.

alleges that the draft judgment order and the revised judgment order which were sent to the staff of the Clerk's office of the Newport News Circuit Court and Judge Fisher falsely purported that she was found in criminal contempt of Court.  Pl.'s Resp. to Quadros' Int. No. 4, a copy of which is attached hereto as Exhibit H.  Plaintiff also claims that Defendants violated 15 U.S.C. §1692f by requesting an Order finding her in criminal contempt without probable cause and without giving Plaintiff notice and an opportunity to defend.  Compl. at ¶ 53.

Plaintiff cannot prevail on her claim pursuant to the FDCPA.  The threshold inquiry for a FDCPA claim is whether the alleged conduct was used in an attempt to collect a debt.  The protections of the FDCPA on which Plaintiff relies, 1692e(7) and 1692f both relate to the use of any false, deceptive or misleading representation or means in connection with the collection of any debt.  15 U.S.C. §1692.  In this case, it is absolutely uncontroverted that the conduct on the part of Mr. Quadros in preparing, sending to the Court, and ultimately, requesting entry of a judgment order which referred to Plaintiff's "contempt of court" was wholly unrelated to the collection of a debt.  Defendants were simply responding to what they viewed as an improper tactic on the part of Plaintiff.  As Plaintiff has admitted, the Motion to Quash Subpoenas and For Sanctions was related solely to the deposition of Cecelia Nguyen, an employee of Quadros & Associates.  Ex. A at No. 1A and Ex. B. at 108:8 to 108:21 and 109:3 to 109:6.  It was this Motion which led Judge Fisher to sanction Plaintiff pursuant to Virginia Code §8.01-271.1 for her harassment and unnecessary delay in attempting to set a deposition for which he had determined that there was simply no basis.  Ex. A at No. 1I and Ex. B at 128:15 to 128:18.  In preparing the Order as he was instructed to do, Mr. Quadros was simply documenting the ruling of the Court on this discrete issue.  Plaintiff cannot demonstrate otherwise.

Assuming that Plaintiff is somehow able to overcome the threshold inquiry[2] Plaintiff still cannot prevail. For purposes of the instant Motion only, Defendants will concede that Plaintiff is a consumer and Defendants are debt collectors under the FDCPA.  However, there has been no violation of the FDCPA by Defendants under either section 1692e(7) or 1692f.  Section 1692e(7) specifically prohibits a debt collector from "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. 1692 e(7).  Section 1692f specifically prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. 1692f.   In this case, there was no false representation that Plaintiff committed a crime or engaged in other conduct to disgrace her. Defendants also did not use any unfair or unconscionable means because Defendants did not request an order finding Plaintiff in criminal contempt.  Although the proposed judgment order and the revised proposed judgment order both contained the phrase "contempt of court," use of this terminology by Defendants was not false, improper or in any way unfair or unconscionable. Generally speaking "[c]ontempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." Robinson v. Commonwealth, 41 Va. App. 137, 142 583 S.E. 2d 60, 63 (2003) (citing 4A Michie's Jurisprudence Contempt § 2 (Repl. Vol. 1983)).   More importantly, however, is the fact that contempt "can be classified as either 'criminal' or 'civil,' although each may partake of the characteristics of the other."  Powell v. Ward, 15 Va. App. 553, 558, 425 S.E.2d 539, 542 (1993).  The Virginia Supreme Court has commented on the distinction between the types of contempt:

> "Proceedings for contempt of court are of two classes -- those prosecuted to
> preserve the power and to vindicate the dignity of the court, and those

---

[2] Although the underlying action generally involved the collection of a debt, the specific conduct of the part of Defendants was undertaken only in response to the improper actions of Plaintiff during the litigation proceedings and not the pursuit of the underlying debt.

instituted to preserve and enforce the rights of private parties.   The former
are criminal and punitive in their nature; the latter are civil and remedial."

Roanoke Water Works Co. v. Roanoke Glass Co., 151 Va. 229, 235, 144 S.E. 460, 462 (1928).

In this case, Plaintiff was being punished for her harassment and unnecessary delay in attempting

to set a deposition (Ex. A at No. 1I and Ex. B at 128:15 to 128:18), a punishment which was civil

and remedial in nature.   It is clear that Plaintiff was found to be in civil contempt of court during

the Final Pretrial Hearing and in fact, Judge Fisher specifically referred to Virginia Code Section

§8.01-271.1 during the hearing.   Ex. A at No. 17.   Virginia Code §8.01-271.1 is a civil statute

designed to "protect litigants from the mental anguish and expense of frivolous assertions of

unfounded factual and legal claims and against the assertions of claims for improper purposes;

and to protect courts against those who would abuse the judicial process."   Oxenham v. Johnson,

241 Va. 281, 286, 402 S.E.2d 1, 3 (1991).   It is equally clear that Plaintiff was not being

punished for misbehavior in the presence of the court, or for violence of threats of violence to a

judge or officer of the court, a juror, a party or a witness, or for misbehavior in the presence of

the Court, or for violence or threats of violence, or for improper or insulting language, or for

disobedience or resistance of an officer of the court (Ex. B at 129:16 to 129:18 and 130:3 to

130:15), which could have led to her being found in criminal contempt pursuant to Virginia Code

§18.2-456.   Indeed, Judge Fisher specifically pointed out in his Amended Judgment Order, that

Plaintiff was not being punished pursuant to Virginia Code §18.2-456 or any other criminal

statute.   Ex. B at 1I.   Further, criminal contempt was not mentioned by either Mr. Quadros or the

Court during either the Final Pretrial Hearing or the trial and the proposed judgment order

prepared by Mr Quadros did not refer to criminal contempt.   Ex. A at 1D and Ex. B at 110:21 to

110:25 and 111:1 to 111:3 and 114:14 to 114:21.   Instead, it referred generically to "contempt of

court" and that Plaintiff was to be a sanctioned in the amount of $500.00.   While the proposed

judgment order and the revised proposed judgment order could possibly have been more artfully

worded, the orders did not falsely represent that Plaintiff committed a crime, nor were the orders unfair or unconscionable.  Further, by requesting entry of the proposed judgment order, and then the revised judgment order, Mr. Quadros was not requesting that Plaintiff be found in criminal contempt of court.  Plaintiff's claim for Defendants' violations of the Fair Debt Collection Practices Act fail as a matter of law.

### D.      Defendants Did Not Maliciously Prosecute Plaintiff.

In Count Five of her Complaint, Plaintiff alleges a cause of action for malicious prosecution arising from Defendants' requesting and causing to be entered, a court order finding Plaintiff in criminal contempt of Court.  Compl. at ¶77.  Plaintiff argues that "no probable cause for contempt existed, and that Defendants knew that no probable cause for charge of contempt existed."  Compl. at ¶78.

An action for malicious prosecution most often is based upon an underlying criminal[3] proceeding maliciously instigated without probable cause, which terminated in a manner not unfavorable to the plaintiff.  Donohoe Construction Co., Inc v. Mount Vernon Associates, 235 Va. 531, 540, 369 S.E. 2d 857, 862 (1988).  In Virginia, malicious prosecution actions are not favored.  Pallas v. Zaharopoulos 219 Va. 751, 755, 250 S.E.2d 357, 358 (1979).  To establish a prima facie case of malicious prosecution under Virginia law, a plaintiff must allege and prove (1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; (2) that it was instituted, or procured by the cooperation of, the defendant; (3) that it was without probable cause; and (4) that it was malicious. Id.

---

[3] The Virginia Supreme Court has, however, recognized that a cause of action for malicious prosecution will lie for the malicious institution of a groundless civil proceeding.  Id. (citing Ailstock v. Moore Lime Co., 104 Va. 565, 570-71, 52 S.E. 213, 215 (1905)).  A plaintiff in a malicious prosecution action based upon civil proceedings must plead and prove arrest of his person, seizure of his property, or special injury. Id. (citing Ayyildiz v. Kidd, 220 Va. 1080, 1084, 266 S.E.2d 108, 111 (1980).

Plaintiff's malicious prosecution claim also stems from the debt collection case discussed infra.  Although it's not entirely clear, it would appear that Plaintiff is claiming that Defendants maliciously instigated a criminal proceeding (as opposed to civil) because according to her Complaint, Defendants "requested, and caused to be entered a court order finding Plaintiff in criminal contempt of Court." Compl. at ¶ 77.  Further, in her discovery responses, Plaintiff also contends that she has a "criminal conviction" and that she was "convicted of contempt of Court on June 29, 2011 [when Defendants] submitted to the Court a second draft Order that included completely groundless conviction of contempt of court."  Ex. C at No. 1.  Plaintiff also claims that "no probable cause for [the] charge of contempt existed and Defendants knew that no probable cause existed" and that the action for contempt was terminated favorably to [Plaintiff]". Compl. at ¶¶ 78, 80.  The assertion that the action for contempt was terminated favorably refers to the fact that ultimately, following her filing of a Motion for Reconsideration, Judge Fisher vacated the revised judgment order that was not signed by Plaintiff and entered an Amended Judgment Order.

Plaintiff's allegations merely recite the elements of a cause of action for malicious prosecution but she fails to provide any substantive facts supporting such a claim.  Plaintiff's contention that she has been criminally convicted of contempt of court is completely spurious. First and foremost, Plaintiff cannot establish that a criminal prosecution was actually instigated, when she has admitted that she was not charged with contempt.  Ex. H. at No. 6.  In Virginia, the process by which an accused may be charged with a criminal offense includes indictment, presentment, information, arrest warrant, or summons.  Andrews v. Ring, 266 Va. 311, 321, 585 S.E.2d 780, 785 (2003).  Plaintiff has not even alleged that any of these methods were utilized, much less presented evidence of such process.  In her discovery responses, Plaintiff has admitted that no contempt charges were brought against her and the Court did not consider contempt

charges against Plaintiff.  Ex. C at No. 1.  Further, Plaintiff has admitted that the Court did not

conduct any proceedings in trial in open court on charges for contempt and never announced a

ruling with a conviction of contempt.  Ex. C at No. 1.  Thus, the sole basis for Plaintiff's claim

with regard to Defendants' malicious prosecution stems from the allegation that Defendants

"caused the final judgment Order [to be] entered which included the clause falsely stating the

finding of contempt."  Ex. H. at No. 6.  The circumstances of the proposed judgment order, the

revised judgment order and the Amended Judgment Order entered by Judge Fisher were

discussed at length in Section C and will not be repeated.  However, it is important to point out

again that the use of the phrase "contempt of court," in the final judgment order was not

improper because Plaintiff was found to be in civil contempt of court during the Final Pretrial

Hearing.   Plaintiff was not being punished for any behavior that would result in the issuance of a

criminal attachment pursuant to Virginia Code §18.2-456 and consequently, Plaintiff cannot

demonstrate that a *prosecution* was initiated by Defendants, or anyone else, for that matter.

Further inquiry is not required because Plaintiff cannot demonstrate the first element required in

a cause of action for malicious prosecution: that a prosecution was instigated by the defendant.

Plaintiff's claim for malicious prosecution fails as a matter of law.

### E.    Defendants Did Not Violate Plaintiff's Civil Rights

In Count Six of her Complaint, Plaintiff complains that Defendants Robert Quadros and

Quadros and Associates, P.C. (herein "Defendants") violated her civil rights.  This allegation

stems from the same set of facts involving the order which purportedly found Plaintiff in

criminal contempt of court.  See Compl. at ¶85-87.  Plaintiff contends that "as a proximate result

of entry of the contempt order, Plaintiff sustained special injury to her constitutionally protected

due process rights and due to being falsely convicted in criminal contempt for which she was not

actually guilty." Compl. at ¶89.  Although not specifically pled by Plaintiff, generally speaking,

rights protected by the Federal Constitution's Due Process Clause may be vindicated by an

action under 42 U.S.C.A. § 1983.  Monroe v. Pape, 365 U.S. 167, 178 (1961).   42 U.S.C. §1983

provides, in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage,
> of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress."

42 U.S. C. §1983.  To state a claim under § 1983, a plaintiff must allege facts indicating that they

were deprived of rights guaranteed by the Constitution or laws of the United States and that this

deprivation resulted from conduct committed by a person acting under color of state law.

Manship v. Trodden, 2007 U.S. Dist LEXIS 78913, 7 (E.D. Va.) (2007).  However, since the

United States Constitution regulates only the government and not private parties; a litigant

claiming a violation of constitutional rights must first establish that the conduct he challenges

constituted "state action." Id. (citing Blum v. Yaretsky, 457 U.S. 991, 1002-05, 102 S. Ct. 2777,

73 L. Ed. 2d 534 (1982).  To qualify as "state action," the challenged conduct "must be caused

by the exercise of some right or privilege created by the State or by a rule of conduct imposed by

the State or by a person for whom the State is responsible," and the "party charged with [such

conduct] must be a person who may fairly be said to be a state actor." Id. (citing Lugar v.

Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)).

   Once again, Plaintiff's entire claim hinges on her allegation that she was falsely

convicted of criminal contempt of court.  For all the reasons outlined at length in Section C and

D, which will not be repeated herein, Plaintiff's allegation that Defendants violated her civil

rights is untenable because she was not found guilty of criminal contempt of Court.  Therefore,

Plaintiff cannot contend that she was deprived of a right secured by the Constitution and the laws

of the United States.  Further inquiry as to whether or not Defendants were acting under the color

of state law is not required because Plaintiff cannot establish that any state action was taken in this case, nor can she demonstrate a deprivation of her rights. Consequently, Plaintiff's allegation that Defendants violated her civil rights fails as a matter of law.

### F. Plaintiff Cannot Demonstrate Malicious Use of Process or Abuse of Process on The Part of Defendants

In Count Two of her Complaint, Plaintiff asserts a claim for malicious use of process and in Count Three of her Complaint, Plaintiff asserts a claim for abuse of process. These two counts should be considered together because the alleged wrongful conduct complained is identical and as discussed herein, Plaintiff's two claims are mutually exclusive.

To sustain a cause of action for malicious use of process, the plaintiff must prove that the defendant lacked probable cause in initiating process for its ostensible purpose. Ross v. Peck Iron & Metal Company, Inc., 254 F2d 262, 267 (1959). The plaintiff must also demonstrate that the process was used has terminated favorably to the plaintiff in the suit at bar. Id.

On the other hand, to sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. Donohoe Construction Co., Inc v. Mount Vernon Associates, 235 Va. 531, 539, 369 S.E. 2d 857, 862 (1988) (citing Mullins v. Sanders, 189 Va. 624, 633, 54 S.E.2d 116, 121 (1949). According to the Virginia Supreme Court, "[t]he distinctive nature of abuse of process lies in the perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended." Id. A legitimate use of process, carried out to its authorized conclusion, even when performed with bad intention, is not a malicious abuse of that process. Id. "Process is maliciously abused when it is used oppressively, *e.g.*, as 'a whip to force the payment of an alleged indebtedness…or as a means of extortion'" Id. "The gravamen of the tort lies in the abuse or the perversion of the process after it

has been issued.  Consequently, 'it is not necessary to allege or prove that the process was

maliciously [issued].'"  Id. at 571, 98 S.E. at 668.

The fundamental distinction between malicious use and malicious abuse of process is that

the first is an employment of process for its ostensible purpose, although without probable cause,

whereas the second is employment of process for a purpose not contemplated by law.  Another

distinction is that, in case of malicious use, it must be shown that the action in which the process

was used has terminated favorably to the plaintiff in the suit at bar, whereas this is unnecessary

in an action for malicious abuse. Ross 254 F2d at 267.

In Count Two, the claim for malicious use of process, Plaintiff maintains that the

Defendants initiated or caused to be initiated an action for pretrial attachment of Plaintiff's

property.  Compl. at ¶58.  Plaintiff contends that no probable cause for attachment existed and

that by initiating and prosecuting the attachment lawsuit, Defendants actions and tactics were

"frivolous, harassing, and conducted in bad faith in that Defendants failed to name [Plaintiff] as a

defendant, represented both Plaintiff and co-defendant, and purposely posted a knowingly

defective bond."  Compl. at ¶59-60.  In Count III, the claim for abuse of process, Plaintiff makes

the almost identical initial allegation with one small twist: Defendants initiated, or caused to be

initiated, an action for pretrial attachment of Plaintiff's property *as property of another*.  Compl.

at ¶65.  In Count III, Plaintiff also argues that the action for pretrial attachment "pursued the

ulterior purpose to deprive [Plaintiff] from exercising her property rights."  Compl. at 66.  In

both counts, Plaintiff is objecting to the Complaint for Pretrial Attachment filed by Defendants in

the Newport News Circuit Court.

As a threshold matter, it should be observed that Plaintiff's claims cannot support a cause

of action for both malicious use of process and abuse of process based on the same set of facts

because regular use of process cannot constitute abuse of process.  See Ross, 254 F.2d 262.

Under Virginia law, although a plaintiff may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence (see Virginia Code §8.01-281), it is equally clear that "[w]e do not permit a litigant to assume inconsistent and mutually contradictory positions." Winslow, Inc. v. Scaife, 299 S.E. 2d 354, 358, 244 Va. 647, 653 (1983) (citing McLaughlin v. Gholson, 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970)).   Plaintiff's claims are mutually exclusive -- Plaintiff cannot claim that the initiation of the action for pretrial attachment was proper (i.e. employed for an ostensible purpose), but was done without probable cause and at the same time argue that the initiation of the action for pretrial attachment was not proper (i.e. that Defendants employed process for a purpose not contemplated by law).

By way of background, on or about June 23, 2008, Defendants, acting on behalf of Schempf, filed a Complaint for Pretrial Attachment against Sinkine in the Circuit Court for the City of Newport News.  Compl. at ¶18.  According to Plaintiff, this action was initiated to "defend Wilson against Babakaeva's lawsuit demand to return her funds [by] Defendants suggest[ing] to Bryan Schempf…to initiate a lawsuit against a third-party, Nikolai Sinkine, for pretrial attachment of the whole amount of [Plaintiff's] funds held by Wilson."  Compl. at 17. To understand why the Complaint for Pretrial Attachment was filed, some history is helpful.   On January 10, 2006, Jones Blechman was retained by Sinkine to represent him in a divorce action against Plaintiff.   Ex. E at ¶3.  During his representation, Sinkine and Jones, Blechman reached an agreement whereby the firm would be paid from his share of the net equity in the marital residence, once sold.  Ex. E at ¶4.  The marital residence was eventually sold in April 2007 and by agreement of the parties, the remainder of the proceeds from the sale of the marital residence, a total of $92,291.07, was placed in an escrow account with Wilson & Wilson, P.C. (the "proceeds held by Wilson"), who was at the time, counsel for Plaintiff.  Ex. E at ¶¶7-8.  During

22

the pendency of the divorce proceedings, Sinkine had claimed an interest in the proceeds held by

Wilson. Ex. B at 48:22-25 to 49:1.  In fact, Sinkine believed he was entitled to approximately

$54,984.88 of the proceeds held by Wilson because a portion of this amount represented

repayment of his separate contribution to the purchase of the house and a credit because he had

made the monthly mortgage payments, additional principal payments and utility payments.  Ex.

E at ¶9.  The Decree of Divorce was entered by the Hampton Circuit Court on June 19, 2007 and

matters of equitable distribution were still in dispute.  Ex. A at No. 1M and Ex. E. at ¶11.  In

March 2008, Schempf learned Plaintiff and Sinkine still had not reached a settlement agreement

which would resolve the dispute over the division of the proceeds held by Wilson. Ex. E at 35.

Prior to the time when the Complaint for Pretrial Attachment was filed by Defendants in June

2008, Schempf had filed not just one, but two Notices of Charging Lien pursuant  to Virginia

Code §54.1-3932  in the Hampton Circuit Court seeking to protect the interests of Jones

Blechman.  Ex. E at ¶¶ 6, 13.  Then, on about January 18, 2008, Schempf filed a Petition to

Enforce Attorney's Charging Lien, which was scheduled to be heard by the court on February

28, 2008.  Schempf Decl. at ¶¶14-15.  Although Plaintiff would have this Court believe that the

claim was "squarely defeated under the threat of sanctions" (See Ex. I at No. 2), this is simply

not the case.  The truth of the matter is that on February 27, 2008, the day prior to the hearing

referenced above, Schempf received a letter and pleading entitled "Special Appearance

Objecting to Jurisdiction" from Teddy Midkiff, an attorney from Chesterfield, Virginia who

advised that he had been retained to represent Ms. Babakaeva. Ex. E at ¶16.  Mr. Midkiff

requested that the Petition to Enforce the Charging Lien be withdrawn, arguing that the Court did

not expressly reserve jurisdiction to decide the equitable jurisdiction issues and that the charging

lien was premature. Ex. E at ¶17.  Given the fact that the challenge had been received less than

24 hours prior to the hearing and the fact that Schempf knew he had other options available to

pursue Mr. Sinkine for repayment of his legal fees, he did not spend time researching the issues raised by Mr. Midkiff, but simply elected to remove the hearing from the court's docket and continued the matter generally.  Ex. E at ¶17.  In fact, based on the language in the Decree of Divorce and his review of the transcript of the May 2007 hearing, Schempf was of the opinion that the Hampton Circuit Court retained jurisdiction over the equitable distribution issues.  Ex. E at ¶12.  Based on the actions of Sinkine and Plaintiff, Schempf had sufficient reason to believe that the proceeds held by Wilson were in jeopardy pursuant to Virginia Code §8.01-534 and requested that Defendants proceed with filing a Complaint for Pretrial Attachment.  Ex. E at ¶¶18-19.

The undisputed facts establish that Plaintiff cannot demonstrate the required elements to sustain a cause of action for malicious use of process.  Plaintiff cannot satisfy the first prong required to sustain a cause of action for malicious use of process because Defendants possesssed probable cause to file the Complaint for Pretrial Attachment.   It is undisputed that Sinkine had agreed that the firm would be paid from his share of the net equity in the marital residence, once sold, and that he claimed an interest in the proceeds from the sale of the marital residence.  Ex. B at ¶¶4, 9.  It is also undisputed that Mr. Sinkine never advised his attorney of any intention to disclaim, surrender, or otherwise abandon his claim to the proceeds[4].  Ex. B ¶ 10.  As late as March 28, 2008, just three months prior to the filing of the Complaint for Pretrial Attachment, the parties, by virtue of a jointly signed letter, suggested that they had not reached an agreement which would resolve the dispute over the division over the proceeds held by Wilson.  Ex. E at

---

[4] Although Sinkine ultimately abandoned his right to any of the proceeds is of absolutely no consequence to the instant matter because he never advised Schempf, his attorney, that he was disclaiming, surrendering or otherwise abandoning his claim to any of the proceeds held by Wilson.  Ex. E at ¶10.  Even if Sinkine had advised Schempf of his intention to disclaim, surrender, or otherwise abandon his claim to the proceeds, his new position would have been inherently suspect and independent grounds for filing the Complaint for Pretrial Attachment because Sinkine, at one point in time, had made a claim to a substantial portion of the proceeds.  Abandoning his claim could have been interpreted as an attempt to renege on his obligation to pay Jones Blechman from the net equity of his share of the marital proceeds.

¶18.  These irrefutable facts constitute ample probable cause for the filing of the Complaint for

Pretrial Attachment.

Plaintiff also does not satisfy the second prong required to sustain a cause of action for

malicious use of process because it clear that the Complaint for Pretrial Attachment did not

terminate favorably on her behalf.   First, it should be noted that the Complaint for Pretrial

Attachment did not name Plaintiff because there was no requirement that she be involved in the

case.  Pursuant to Virginia Code §8.01-539, Plaintiff was a discretionary party to the action.

Virginia Code § 8.01-539 outlines the proper parties to an attachment:

> "A person against whom the plaintiff is asserting the claim shall be made a
> defendant to the petition, and shall be known as a principal defendant. There shall
> also be made a defendant any person indebted to or having in his possession
> property, real or personal, belonging to a principal defendant, which is sought to
> be attached. There *may* also be made a defendant any person claiming title to, and
> interest in, or a lien upon the property sought to be attached. A defendant, other
> than a principal defendant, shall be known as a codefendant." (emphasis
> provided).

Va. Code §8.01-539.  In this case, Sinkine was the principal defendant and even though

Plaintiff was claiming an interest in a portion of the proceeds held by Wilson, she was not a

mandatory party.  Plaintiff's presence was not required because the Complaint for Pretrial

Attachment would only prevail if a court determined that Sinkine was entitled to a portion of the

proceeds held by Wilson.  Plaintiff injected herself unnecessarily into the litigation, then

removed the case to the United States District Court (see generally, See Jones, Blechman, Woltz

& Kelly, P.C. v. Sinkine, 4:08-cv-00123-RAJ-JEB), turning a simple state action into a federal

case.  In terms of the termination of the case, the Complaint for Pretrial Attachment was

voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)  -- quite simply

because it was costing more money than it was worth to pursue the matter.  Ex. E at ¶27.

Interestingly enough, Plaintiff fought the voluntary dismissal -- and lost.  See Jones, Blechman,

Woltz & Kelly, P.C. v. Sinkine, 4:08-cv-00123-RAJ-JEB, Docket No. 17, 23.

25

The undisputed facts also establish that Plaintiff cannot demonstrate the required elements to sustain a cause of action for abuse of process.  Defendants had legal justification for filing the Complaint for Pretrial Attachment, were not motivated by any ulterior purpose and used the action in its normal process.   Under Virginia law, attachment is available to anyone who has a claim, legal or equitable to: (i) any specific personal property; or (ii) any debt, whether the debt is due and payable or not; or (iii) damages for breach of any contract, express or implied.  Virginia Code §8.01-533.   According to the 4th Circuit Court of Appeals (applying Virginia law):

> "The regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice."  Ross 254 F. 2d at 268.

As the Court explained, "the chief purpose of attachment proceedings is to secure a contingent lien on a defendant's property until the plaintiff can, by appropriate proceedings, obtain a judgment and have such property applied to its satisfaction." Id.   In this case, this is exactly the reason Defendants filed the Complaint for Pretrial Attachment.  Based on the actions of Mr. Sinkine and Plaintiff, Schempf had sufficient reason to believe that the proceeds held by Wilson were in jeopardy pursuant to Virginia Code §8.01-534.  Ex. E at ¶¶ 34, 35.  It was for this reason that he requested that Defendants proceed with filing a Complaint for Pretrial Attachment.  Schempf Decl. at ¶34.  Plaintiff's argument that Defendant's ulterior purpose was to "deprive [her] from exercising her property rights" (Compl. at ¶66) and her claim that Defendants were seeking attachment of "her funds as funds of Sinkine" is patently untrue.  It is clear that the only property sought to be subjected to the attachment was Sinkine's interest in the proceeds from the sale of the marital residence and held in escrow by Wilson (Ex. E  at ¶20) because, if a court determined otherwise with regard to the apportionment of the proceeds, then the Firm would not be able to recover from the proceeds held by Wilson.   Ex. E at ¶21.  Schempf also understood

that that it would be necessary to first obtain a judgment against Sinkine[5] to perfect any lien.  Id.

It is undisputed that Defendants were not attempting to access any proceeds and/or property that

rightfully belonged to Plaintiff.  Ex. E at ¶21.  In fact, there was absolutely no reason to prevent

Plaintiff from eventually obtaining whatever interest she had in the proceeds held by Wilson.

Ex. E at ¶25. Consequently, there was no ulterior purpose in filing the Complaint for Pretrial

Attachment and the filing was a regular use of process.   As such, Plaintiff cannot prevail on her

claim for abuse of process as a matter of law.

### G.   Defendants Did Not Convert Plaintiff's Property

In Count IV of her Complaint, Plaintiff complains that Defendants used the orders that

the Newport News Circuit Court issued in the attachment case to exercise unauthorized

dominion and control over her property, and convert, in part or in whole, for the use of their

peers, Plaintiff's property.  Compl. at ¶ 72.

The tort of conversion encompasses any wrongful exercise or assumption of authority . . .

over another's goods, depriving him of their possession; [and any] act of dominion wrongfully

exerted over property in denial of the owner's right, or inconsistent with it.  PGI, Inc., v. Rath

Productions, Inc., 265 Va. 334, 344; 576 S.E.2d 438, 443 (2003) (citing United Leasing Corp. v.

Thrift Ins. Corp., 247 Va. 299, 305, 440 S.E.2d 902, 905, (1994)).  Conversion can be

maintained only by the person having a property interest in and entitled to immediate possession

of the item alleged to have been wrongly converted.  Economopoulos v. Kolaitis, 259 Va. 806,

814, 528 S.E.2d 714, 719 (2000).

In terms of her claim for conversion, Plaintiff takes issue with the retention of the

escrowed funds by Wilson, which was, according to Plaintiff, because of the actions on the part

of Defendants.  Specifically, Plaintiff claims that the funds held by Wilson were held longer than

---

[5] On July 14, 2010, a judgment in the amount of $31,408.88 plus costs of $239.00 was entered against Mr. Sinkine
in favor of Jones, Blechman, Woltz & Kelly, P.C.  To date, the judgment has not been paid.  Ex. E at ¶28.

necessary, explaining that Wilson should have released the funds right after the divorce was finalized.  Ex. B. at 76:23 to 76:25.  According to Plaintiff, Wilson did not "release the funds because [Defendants] made an attachment."  Ex. B. at 77:17 to 77:18.  When asked specifically how Defendants converted "her money," Plaintiff claims that Defendants "made an attachment for these funds."  Ex. B. at 79:2 to 79:6.

First and foremost, Plaintiff's assertions completely ignore the mandate of the Decree of Divorce and Wilson's responsibilities.  The Complaint for Pretrial Attachment filed by Defendants on behalf of Jones Blechman had no bearing on Wilson's obligation to continue to hold the funds, even if he too, was represented by Defendants.  The Decree of Divorce entered by the Hampton Circuit Court in June 2007 clearly and unambiguously required Wilson to hold the funds until further order.  Distribution of the funds to anyone without order of the Court -- including Defendants or their clients -- would have meant sanctions for Wilson.

After the Decree of Divorce was entered by the Hampton Circuit Court did not issue any further order with respect to the funds.  Ex. F at ¶11.  Wilson first suggested that the funds be placed in an interest bearing account and that he be relieved of the responsibility for maintaining the funds, but receiving no response, eventually filed a Complaint of Interpleader in the Hampton Circuit Court.  Ex. F at ¶¶10-11.  Wilson did not agree to protect Bryan Schempf's attorney lien interest nor did Schempf ever make such a request to Wilson.  Ex. F at ¶12.

Second, but equally important is the fact that Plaintiff was not entitled to immediate possession of the funds held by Wilson, a condition required to maintain an action for conversion.   At the time the Decree of Divorce was entered by the Hampton Circuit Court in June 2007, matters of equitable distribution in this case were still in dispute.  Ex. A at No. 1M and Ex. E at ¶11.   In March 2008, Plaintiff and her ex-husband still had had not reached a settlement agreement which would resolve the dispute over the division of the proceeds held by

Wilson. Ex. E at ¶18.  In May 2009, Wilson wrote to Plaintiff and explained to her that he was under Order of the Hampton Circuit Court pending the outcome of equitable distribution which had not occurred.  Ex. I at 1A.  Wilson also explained that he wished to be relieved of the responsibility of holding the funds.  Ex. I at 1M.   Until a court of law made a determination of the respective rights of the parties -- or one party voluntarily and affirmatively disclaimed their right to a portion of the proceeds, neither party was entitled to immediate possession of the funds.   As a result, Plaintiff cannot demonstrate that Defendants exercised dominion and control over "her" funds, nor can she demonstrate that she was entitled to immediate possession of the funds held by Wilson and her claim for conversion must fail as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Defendants, Robert P. Quadros, Raymond Bacon and Quadros & Associates, P.C., by and through counsel, respectfully pray that this Court grant their Motion for Summary Judgment against Plaintiff Tatyana Babakaeva and for other such relief is necessary and proper.

ROBERT P. QUADROS
RAYMOND BACON
QUADROS & ASSOCIATES, P.C.


Dated: March 16, 2012                    _____/s/_____

Mary T. Morgan, Esq.
VSB No.: 44955
COOPER, SPONG & DAVIS, P.C.
200 High Street, Suite 500
Portsmouth, Virginia 23704
Telephone: (757) 397-3481
Facsmile: (757) 397-8167
Fax: 757-397-8167
Email: mmorgan@portslaw.com
*Counsel for Defendants Robert P. Quadros,*
*Raymond Bacon and Quadros & Associates, P.C.*

**<u>CERTIFICATE</u>**

I hereby certify that on the 16th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and a true and accurate copy of the foregoing will be hand-delivered and sent via U.S. Mail, first class, postage pre-paid to the following:

Tatyana A. Babakaeva
2124 Criston Drive
Newport News, Virginia 23602
*Pro se Plaintiff*

_____/s/_____
Mary T. Morgan, Esq.
VSB No.: 44955
COOPER, SPONG & DAVIS, P.C.
200 High Street, Suite 500
Portsmouth, Virginia 23704
Telephone: (757) 397-3481
Facsimile: (757) 397-8167
E-mail: mmorgan@portslaw.com
*Counsel for Defendants Robert P. Quadros,*
*Raymond Bacon and Quadros & Associates,*
*P.C.*