IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Newport News Division**

```
                                    ┌──────────────────────────┐
                                    │        FILED             │
TATYANA  A. BABAKAEVA,        )     │                          │
                              )     │     MAR  2 8 2012         │
              Plaintiff,      )     │                          │
                              )     │  CLERK, US DISTRICT COURT│
v.                            )     │      NORFOLK, VA          │
                              )     └──────────────────────────┘
                              )     Civil Action No. 4:11 cv 78
Robert P. Quadros et. al.,    )
                              )
              Defendants.     )
_____)
```

### RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tatyana A. Babakaeva, *pro se*, ("Babakaeva") respectfully submits this

Response in Opposition to Defendants' Motion for Summary Judgment .

### I. INTRODUCTION

When principle defendant, Quadros and Associates, P.C., was being prosecuted by

Babakaeva for a number of FDCPA violations, defendants expressly and in writing threatened to

retaliate against Babakaeva, including making threats of baseless criminal prosecution.

Consequently, after suffering adverse judgment on seven counts of FDCPA violations and

pursuing the stated goal, defendants committed several unlawful intentional acts calculated to

injure, and actually injured, Babakaeva. These defendants action give rise to the present case.

As Babakaeva  shows below, each of the paragraphs of her Complaint is footed on

evidence that will support jury verdict in her favor. Defendants are attempting to avoid such

inevitable outcome by filing Motion for Summary Judgment with supporting Memorandum.

As Babakaeva demonstrates in this Response, defendants failed to present any admissible

materials which would support their attack on any of Babakaeva's claims. Instead, defendants

present, as alleged "undisputed material facts", such matters as personal believes of third-party

1

individuals on various irrelevant issues, hearsay, and statements on issues that are not material or dispositive as to any of the claims. Curiously, defendants' arguments directly contradict their own alleged "material undisputed facts" and are refuted by their own exhibits. Moreover, most of the alleged "undisputed facts" that purport to establish existence and contents of written documents do not quote, cite to or refer to the documents in question, but rather cite to expressions of personal opinions as to the meaning of such documents. As Babakaeva demonstrates, the whole defendants' argument is substantially based on a set of common fallacies.

Accordingly, defendants Memorandum in Support does not establish any ground for summary judgment and itself calls for directing of the case to jury for decision on all counts of Complaint and on award of damages. Defendants' motion should be denied for two reasons: Babakaeva has adduced evidence sufficient to create a genuine factual dispute on each element of her claims; and Defendants are wrong as a matter of law on the central legal issues of their contentions.

## BABAKAEVA'S STATEMENT OF GENUINE ISSUES

Pursuant to Local Civil Rule 56(B), Babakaeva hereby set forth the genuine issues necessary to be litigated as follows:

1. Defendants initiated the Warrant in Debt action on behalf of Wilson & Wilson P.C. ("Wilson") with submitting anonymous affidavit falsely stating, among other things, that amount of the alleged debt was $2,848.18. Simple review of the underlying contract would reveal that Wilson was not entitled to such amount under any legal theory.

2. Defendants refused to reveal identity of the purported affiant. In attempt to exercise her right to examine the witness, Babakaeva decided to find the identity of the affiant by reviewing public records. With such purpose, Babakaeva telephoned the notary public who

notarized the affidavit, Cecilia Nguyen, reg. No.7056879, at the official phone registered with Virginia Secretary of State. During conversation with the notary, it appeared that notary was not able to identify affiant, apparently because there was no record of the notarial acts was available. Notary promised Babakaeva to review the affidavit (Exhibit 1) and to return the call, which she never did.

3.      The next day, Babakaeva received a letter from defendants that stated, in part, that state official, notary public, was employed by defendants and that defendant Robert P. Quadros ("Quadros") banned any communication of Babakaeva with the state official, notary public, Cecilia Nguyen. Quadros also stated that he was solely responsible for any inappropriateness in notarial acts executed by notary public (Exhibit 2).

4.      To review public record and to find the name of the affiant, Babakaeva properly requested a witness subpoena and obtained a permission of the Court administrator to use a witness room for deposition (Exhibit 3). No protective Order or any other ruling of the Court limiting discovery had been issued.

5.      Defendants moved to Quash Subpoena and for Sanctions and Babakaeva filed Response in opposition to Motion to Quash Witness Subpoena and for Sanctions against Defendant" (Exhibit 4). During pre-trial hearing, defendants presented to the Court that Cecilia Nguyen was hysterical after she received witness subpoena. Defendants did not produce any evidence as to such statement.

6.      On or about May 10, 2010 Quadros prepared a proposed Judgment Order which was later rejected  by the Court. On or about June 8, 2011 Quadros sent Babakaeva a letter stating  he " had revised the Judgment Order", and that he intended "to schedule a hearing to have the Order entered" (Exhibit 5). Quadros did not furnish Babakaeva with a copy of said Order.

3

7.      Babakaeva requested that Quadros provide a copy of the revised draft (Exhibit 6), to which request Quadros did not respond. Quadros scheduled hearing on entry of revised draft Judgment Order, but refused to provide an endorsed revised draft Order to Babakaeva (Exhibit 7). Babakaeva endorsed copy of revised draft Order stating her objections and delivered it to Quadros and to Court (Exhibit 8).

8.      On June 29, 2010 Babakaeva was advised by the Court that she did not have to appear at the hearing. Later she received Judgment Order that contained endorsement by Quadros under statement "I ASK FOR THIS", with no Babakaeva's objections noted.

9.      The revised Judgment Order includes words that "Babakaeva by law is found to be in contempt of this Court and is sanctioned the sum of $500.00." (Exhibit 9).

10.     Upon Babakaeva's motion for reconsideration, the Court vacated the Judgment Order and prepared Amended Judgment Order, which states, *inter alia,*

> "She [Babakaeva] was advised of the basis for the sanctions in open court on the record and that was not intended to be a citation for a contempt under <u>any Code section,</u> Virginia Code 18.2-456 or <u>any other.</u>" (Exhibit 10, at p.3)

11.     Prior to divorce  trial, Sinkine obtained his maximum estimated share $28,000 of proceeds of real estate sale (Wilson's Answer,  *EDVA, Babakaeva v. Wilson, Case 4:09cv58,* Doc.10, at 17; Wilson's statement of undisputed facts, *Id.,* Doc.65, p. 3 at 4, Exhibit 11 for ease of reference).

12.     The remaining portion of the real estate sale proceeds was transferred to bank account of Wilson & Wilson P.C. and "was correctly and accurately accounted for" in the bank business record of the transfer as "Babakaeva's proceeds" (thereafter, "Babakaeva's proceeds") (Wilson's statement of undisputed facts, *Id.,* Doc.65, p. 3 at 5, Exhibit 11; and Exhibit 12). Wilson maintained Babakaeva's proceeds in the account "Babakaeva – Trust" (Exhibit 13).

4

13.     At the time of granting Babakaeva divorce, the divorce Court did not decide that Sinkine had interest or ownership of any share of Babakaeva's proceeds, and did not expressly reserved jurisdiction over equitable distribution. (Exhibit 14).

14.     Tarkington send a Decree of Reference to Schempf. Schempf abandoned division of property during the time of Court had jurisdiction to do so (Exhibit 15).

15.     After divorce, the only actions of the Court in the case  *"Sinkine v. Babakaeva"*, *CL06-110* have been Orders granting Schempf and Tarkington leave to withdraw, which was on November 6, 2007 and May 2, 2008. Divorce Court has never addressed any property issues. Wilson instigated a new independent case for interpleader, *"Wilson v. Babakaeva"*, *CL09002375*. Interpleader action was eventually abandoned by Wilson. Babakaeva obtained her funds on her Petition for Payment (Exhibit 16).

16.     No valid third-party claims to the whole or any portion of Babakaeva's proceeds have been raised  (Wilson's sworn answer to the second set of interrogatories, *EDVA Case Babakaeva v. Wilson, Case 4:09cv58*, Exhibit 17).

17.     On or about October 5, 2007 Wilson received a letter from Tarkington in response to  Wilson's letter dated September 19, 2007. Tarkington suggested that Wilson transfer Babakaeva's proceeds to an interest bearing account (Exhibit 18), to which Wilson never responded.

18.     Babakaeva has rightfully obtained possession of the whole amount of the proceeds, which was her fair share of the marital property (Wilson's Decl. at 11, Defendants' Exhibit F filed simultaneously with Defendant's SJ, and Schempf's declaration at 4 (Exhibit 33 for ease of reference) both filed in the case *EDVA Case Babakaeva v. Wilson, Case 4:09cv58*).

19.    On or about July 2, 2007 Babakaeva had the immediate right of possession of Babakaeva's proceeds, intended and was able to take full amount of Babakaeva's proceeds and was free to remove the funds from the Commonwealth.

20.    Defendants initiated proceedings for attachment of Babakaeva's proceeds that totaled $92, 291.07 (Exhibit 19, page 2 at 5) stating that Babakaeva..... "intend to gain possession of the funds being held by Wilson and to remove these funds our of the Commonwealth (Exhibit 20 at 3).

21.    Defendants represented both attachment plaintiff Schempf and statutory defendant Wilson. Defendants did not name indispensable party Wilson as party to the lawsuit but argue Motion on his behalf.

22.    Defendants had actual knowledge that Babakaeva was beneficiary of Babakaeva's proceeds and, prior to attachment case, were in constant communication with Babakaeva, on behalf of his client Wilson, regarding Babakaeva's proceeds ( Exhibit 21).

23.    Defendants did not name Babakaeva as party defendant.

24.    Defendants filed attachment bond payable only to Sinkine.

25.    Defendants "requested that [Babakaeva's proceeds] be attached to secure the Schempf's claim" (Exhibit 22 at 22, *EDVA, Babakaeva v Quadros, case 4:08cv129*, Doc.7). Defendans placed hand written signature  request "I ask for this", which request was granted by the Court,  (Exhibit 23). Defendants requested attachment of the full amount of Babakaeva's proceeds, notwithstanding Schmepf's protestation (Exhibit 24).

26.    Defendants were directed by the Court to deliver the Order of attachment to Wilson, and actually delivered such Order as directed. On or about August 22, 2008 Wilson received the Order of Attachment (Exhibit 25).

6

27.     At the time of hearing on Wilson's Motion to Modify on Nov 17, 2009, defendants stated to the Court that they did not have any proof of any identifiable Sinkine's beneficiary interest in Babakaeva's proceeds (Exhibit 26, transcript of November 17, 2008 hearing, p.31 at 19-20, p.32 at 4:7).

28.     During November 17, 2008 hearing defendants agreed with the Court's determination that Schempf could not assert claims to Babakaeva's proceeds unless Sinkine obtains ownership right to at least some portion of them (Exhibit 26, at p.17 at 17: 25, p.18 at 1:12).

29.     Purpose of the attachment case was to prevent Babakaeva from having access to the full amount of Babakaeva's proceeds (Exhibit 19, p.3 ; Exhibit 22 at p.4 at 22, Exhibit 24). In May 2009, Defendnats abandon the attachment case, but filed another "contract action" against Sinkine in Newport News on June 2, 2009, *Jones v. Sinkine, Case No. CL0901007V-04* (Exhibit 27).

30.     Babakaeva filed her Motion to intervene as a co-defendant on August 31, 2009 (Exhibit 28), which was met with "most rigorous defense" (Exhibit 29). During September 29, 2009 hearing defendants expressly stated absence of intention to seek satisfaction of any portion of Sinkine's debt from Babakaeva's proceeds.   (Exhibit 30, p. 7, at 13:21).

31.     On or about October 26, 2009 defendants filed Opposition to Motion to Intervene, consequently Babakaeva's motion to intervene was denied (Exhibit 31, 32).

32.     At the time of defendants filing complaint for attachment, Babakaeva was in position to obtain Babakaeva's proceeds from Wilson. (Exhibit 20 and Defendant's Exhibit E: Shempf's declaration at 19).

33.     Wilson paid funds to the registry of the Hampton Circuit Court on November 4, 2009 in new action *"Wilson v. Babakaeva", CL09002375* which was not related to any other

cases. No action has occurred in the divorce case after May 5, 2008. Wilson was never

sanctioned for such his action by the divorce Court.

## OBJECTION TO DECLARATION OF BRYAN H. SCHEMPF

Pursuant to Fed. R. Civ. P. 56 Defendants filed in support of their Motion for Summary

Judgment declaration of Bryan Schempf. The declaration is defective and should be excluded.

Fed. R. Civ. P. 56(c)(4) provides:

> (4)    *Affidavits or Declarations.* An affidavit or declaration used to support or
> oppose a motion must be made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or declarant is competent to
> testify on the matters stated.

The declaration is purported to be based on Schempf's "direct knowledge of the

information unless stated otherwise *[emphasis added]*", which is inconsistent with Rule 56(c)(4).

The statements of the alleged facts asserted in declaration constitute or include inadmissible

hearsay, speculations, legal conclusions, inadmissible opinions, and/or directly contradict well-

established facts supported by the record, Schempf's prior sworn statements and other written

undisputed documents. To the extent that by this declaration Schempf purports to introduce,

under the guise of a declaration of a fact witness, an expert opinion not properly disclosed in

discovery and therefore should be excluded.

Babakaeva asserts the following objection to the specific Paragraphs of the declaration of

Bryan Schempf:

2.       According to the Agreement and the Court records, Schempf was counsel of

record for Sinkine from January 2006 to November 6, 2007. Parole evidence rebutting the terms

of unambiguous written contract is not admissible. *Anden v. Leesburg, 237 Va. 453 (1989).*

8.       Schempf was not present at Babakaeva and Sinkine's signing the agreement when

they directed the financial institution to transfer funds to Wilson's bank account. This declaration

is not given during Schemp's employment for Sinkine, and is hearsay. Fed.R.Evid.801(d)(2)(D).

8

9.      Schempf does not show that he is competent to testify as to the truth of subject of Sinkine's belief. The document referred to is not properly authenticated and was likely produced by Schempf, and therefore is not admissible as proof of Sinkine's belief, or for any purpose.

10.     The statement constitutes interpretation of the Court Order and is inadmissible legal conclusion.

12.     Opinion/speculation should be excluded.

15.     Statement introduced as "understanding" is a form of speculation and should be excluded.

17.     The statement introduced with with "I was not convinced" is a form of speculation and should be excluded.

18.     Schempf's interpretation of the writing to which he was not the author or recipient is speculation and should be excluded.

19.     Opinion/speculation and legal conclusion. Should be excluded.

20.     In absence of a statement showing what the Sinkine's interest was, which is consistent with assumption that it was zero, the second clause does not state any substantive fact.

21.     The statement introduced with "led me to believe" is inadmissible speculation and should be excluded. Order of August 18, 2008 attached the whole amount of the funds. In prior sworn statement Schempf represented that the whole amount of Babakaeva's proceeds was her property (Exhibit 33 at 4). The paragraph should be excluded in its entirety.

22.     Inadmissible legal opinion. Should be excluded.

23.     Inadmissible legal opinion. Should be excluded.

25.     Inadmissible legal conclusions. Should be excluded.

27.     First clause is inadmissible opinion. Clause starting with "it was represented to me" introduces hearsay statement of an unknown party communicated to the declarant in

unknown circumstances in an unspecified manner at unknown time with unknown purpose. Should be excluded. The fact that such statement is made by an attorney for use in federal litigation and is introduced by attorney representing attorneys in support of purportedly "undisputed material fact" clearly indicates defendants' intentional and utter disregard of Rule 56 and Rules of Evidence.

28.     Babakaeva was not admitted as party co-defendant in the lawsuit based on the statement of Schempf and defendant that Babakaeva's interests would not be affected by disposition of the case *Jones v. Sinkine, CL0901007V-04* (Exhibits 27-32). Therefore, the statement as to the outcome of said case is inadmissible for any purpose adversely to Babakaeva and should be excluded.

In whole, most of the declaration is inadmissible, and its admissible part either recites the facts already in the record, such as contents of the documents attached as exhibits, facts agreed upon by all parties, or contradicts the well-established facts and documents. Therefore, declaration of Bryan Schempf should be excluded in its entirety.

### RESPONSE TO DEFENDANTS' STATEMENT OF ALLEGED MATERIAL UNDISPUTED FACTS

1.     No objection.

2.     Objected to the extend that Babakaeva sought deposition of the state official, notary public, solely in relation to her performance of the official duties (Exhibit 3). The fact that she was employee of defendants was incidental. See Babakaeva's Statement of Genuine Issues (hereafter, "SGI") at 1-4.

3.     See Objection 2.

4.     Agreed. See also Index to Transcript of the April 15, 2010 hearing (Exhibit 34).

5.     No objection.

6.     No objection.

7.      Objected to the extent that the official Transcript of the trial shows that no word "contempt" was used.

8.      Objection to the truncated quotation. The document speaks for itself.

9.      Objection to the truncated quotation. The document speaks for itself.

10.     Objection to the truncated quotation. The document speaks for itself. Defendants did not furnish a copy of the second draft Order to Babakaeva. See SGI at 6 and 7.

11.     Objection. Defendants did not furnish a copy of the second draft Order to Babakaeva. See SGI at 6. Babakaeva sent signed the revised judgment order to Quadros. See SGI at 7.

12.     Objection. Defendants failed to provide any materials in support of the allegation that defendants *inadvertently* caused the Judgment Order entered. Fed.R.Civ.P. 56(2). Babakaeva took exception to the Judgment Order. See SGI at 8 and 9.

13.     Objection to parole evidence as to the meaning of written Court Order. Fed.R.Civ.P. 56(2). Judge Fisher prepared his own Amended Judgment Order which states that

> "She [Babakaeva] was advised of the basis for the sanctions in open court on the record and that was not intended to be a citation for a contempt under any Code section, Virginia Code 18.2-456 or any other". SGI at 10.

14.     No objection.

15.     Objection. The Judgment Order speaks for itself. It contains no such language.

16.     Agreed. See also Index to Transcripts of the hearing on April 15, 2010 and trial on April 29, 2010, Exhibit 34, 35.

17.     Agreed to the extent that no proceedings for contempt were held against Babakaeva in open Court.

18.     Objection to evidence. Parole evidence rebutting the terms of unambiguous written contract is not admissible. *Anden v. Leesburg, 237 Va. 453 (1989).* See Exhibit 36.

19.     Agree only that the final Decree of Divorce was entered on the day indicated. Objection to parole evidence on the content and interpretation of the written Court Order.

20.     Objection to parole evidence on the content and interpretation of the Court Order. Reference to Babakaeva's response to Quadros' Request for Admission No.1M is misleading as the admission was only as the genuineness of the document, which was Babakaeva's Decree of Divorce, and not to its meaning. Misleading quotation. In pertinent part the final Decree of Divorce states "It is ORDERED ADJUDJED AND DECREED that: A. the marital domicile has been sold and the amount of $92, 291.07 shall remain in escrow with Paul Wilson, Esquire until further Order of the Court".

21.     Not true. At the time of defendants filing complaint for attachment, Babakaeva was in position to obtain Babakaeva's proceeds from Wilson. SGI 33, 34.  Defendants allegations are not supported by evidence.

22.     Objection to parole evidence as to the meaning of unambiguous written contract. Qutation of the contract is truncated. The contract provides, in pertinent part, that "... this amount and any future amount for legal expenses and costs incurred on your behalf will be paid by the closing agent out of your share of the net equity from the sale of your house... will be paid by closing agent". Neither Babakaeva, nor Sinkine or Wilson were "closing agent" for the purpose of the contract.

23.     Objection to evidence. Double-inadmissible hearsay-type personal opinion about third-party belief. Allegation is immaterial to any issues raised in this lawsuit. Sinkine's personal beliefs on any matters during pendency of divorce proceedings are irrelevant to the issue of ownership rights to Babakaeva's proceeds after the divorce was finalized. See SGI at 11 and 12.

24.     Allegation present matter of opinion and is not supported by admissible evidence. See also SGI 13, 14 and 15.

25.     Objection. Schempf himself abandoned Sinkine's claim to Babakaeva's proceeds by refusing to set aside the final Decree of Divorce. The statement that Sinkine did not advise Schempf of the fact that Sinkine, acting through and by his counsel Schempf, abandoned the claim, is ambiguous and misleading. See SGI 14, 15 and 16.

26.     Objection to evidence. Schempf's personal belief is not admissible and is immaterial to any of the issues raised in this action.

27.     Agreed.

28.     No objection.

29.     Not true. The hearing was removed from the docket solely because "Babakaeva, by counsel, successfully objected jurisdiction" (see Order of this Court in *EDVA Case Babakaeva v. Wilson, Case 4:09cv58*, Doc.99 at page 9, footnote 9, Defendants Exhibit D (1J)).

30.     The fact that Babakaeva was about to remove Babakaeva's proceeds was the only ground for attachment that was actually valid. (See Schempf's affidavit in support of attachment, Exhibit 20, Schempf's Declaration at 19 of Defendants' Exhibit E).

31.     The letter does not state that any dispute on the funds existed, it states just that no dispute was resolved. Document speaks for itself.

32.     Not true. See SGI 18 through 29.

33.     Not true. Defendants, acting as Schempf's agents, attached the whole amount of Babakeva's proceeds. See SGI 18 through 29.

34.     Unfortunately, defendants did not understand this simple matter: that it was necessary for their client to first obtain proof of Sinkine's ownership of the property they sought to attach and which they actually attached. Allegation of this paragraph, as to what

13

"Schempf understood", is immaterial to any matters that are at issue in this case. Schempf is not defendant, and there is no statement that defendants were forced to act either in accordance or in opposition to what "Schempf understood".

35.   Schempf's belief is immaterial. Objection to inadmissible evidence.

36.   Schempf's belief is immaterial. Objection to inadmissible evidence.

37.   Not true. Defendants intended and attempted to use attachment proceedings to transfer interest in Babakaeva's proceeds to Sinkine with the purpose to procure payment to Schempf from Babakeva's proceeds. See SGI at 20 through 29.

38.   Not true. Upon dismissal of attachment, Schempf and defendants affirmatively stated to the Court complete and total absence of Schempf's claim to Babakaeva's proceeds, which position was included in the Court's Order on Babakaeva's Motion to Intervene. SGI 30, 31 and 32. Therefore, the reason for dismissal was simply that no Schempf's claim to Babakaeva's proceeds has ever existed, as Schempf allegedly understood according to defendants' alleged material undisputed fact 34.

39.   Objection to evidence. According to Order denying Babakaeva's intervention to theNewport News Circuit Court case *"Jones v. Sinkine"*, *CL0901007V-04*, the Order or any other materials from Court File *CL0901007V-04* may not be used against Babakaeva, and therefore suggested evidence is inadmissible in this case.

40.   True to the extend that after the Decree of Divorce Hampton Circuit Court issued no further Orders with respect to the funds in the divorce case *"Sinkine v Babakaeva"*, *CL06-110*. (Exhibit 16, see SGI 15).

41.   Not true. See SGI 17.

42.   Immaterial.

43.     Agreed. The check included interest earned by Babakaeva's proceeds while being invested by the Hampton Circuit Court.

## LEGAL STANDARD

Babakaeva does not dispute Legal Standard as presented by defendants section "B. Standard of Review".

## ARGUMENT

Defendants do not assert any facts and/or arguments in support of affirmative defenses. Therefore, to prevail on their Motion for Summary Judgment, defendants must establish that Babakaeva is not entitled to relief under any of the alternative theories presented by Complaint for each of the causes of action. Defendants do not even attempt to make such showing, instead making argument that under some hypothetical interpretations of the claims, Babakaeva would not be able to present sufficient evidence to create a genuine issue of material fact. As demonstrated below, defendants' contention is wrong.

### Defendants Violated FDCPA

### 1. Babakaeva was falsely convicted in criminal contempt

Defendants dispute that contempt conviction is criminal. They go  into a long analysis of what was said in proceedings, letters, etc. All this exercise is unnecessary.

It is well established in this Commonwealth that a circuit court speaks only through its written orders. *(see, i.g. Rose v. Jaques, 268 Va. 137, 147, 597 S.E.2d 64, 70 (2004)).* The Order entered by Newport News Circuit Court and reads in pertinent part: "Babakaeva by law is found to be in contempt of this Court and is sanctioned the sum of $500.00" (Exhibit 9).

In essence, defendants contend that the matter for which a person is found in contempt determines the type of contempt. They quote a precedent which defines that contempt may be either "punitive and criminal" or "remedial and civil". Then defendants contend that Babakaeva

15

"was being punished" and that "punishment was remedial", which is conundrum according to the quoted definition[1]. Clearly, defendants completely confused with terms "punishment" and "remedy".

To clarify the issue, it is instructive to make straightforward word-by-word comparison of the wording of the false conviction with the commonly accepted definition using more recent, than cited by defendants, Virginia case finally decided by the S.C.O.T.U.S.:

> "a flat, unconditional fine totaling even as little as $ 50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance", *Int. Union UMW v. Bagwell , 512 U.S. 821, 829 (1994).*

The wording of the conviction announces finding of contempt ""Babakaeva by law is found to be in contempt of this Court" and follows by imposition of unconditional fine: "...is sanctioned the sum of $500.00". Clearly, Order does not contain any possibility for Babakaeva to reduce or eliminate fine by compliance, as there is nothing there to comply with. Thus, the wording of false conviction is in a word-by-word coincidence with the definition of criminal contempt. Defendants arguments are simply wrong.

## 2. Defendants communicated correspondence that included false implication of crime

Defendants raise three very creative arguments: a) that communication was not in connection with debt collection; b) that it was not misleading because Babakaeva was actually found in contempt of Court during pre-trial proceedings; and c) that defendants did not request finding of contempt. Though creative, these assertions are not supported and are not supportable.

### a) Correspondence falls under the FDCPA.

Babakaeva received copy of the proposed Judgment Order and notice of hearing (Exhibit 5) with the following notice typed in capital boldface letters:

---

[1] Even with defendants' approach to classification of contempt, the Order reads as contempt for threatening or harassing a witness, which is a form of obstruction of justice and therefore is criminal.

"THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT DEBT".

The correspondence on June 8, 2010 (Exhibit 5) also contained notice "cc: Judge Fisher", case caption which is indisputably debt collection action, and signature of Robert Quadros. Defendants do not explain how the very same correspondence, when copied to the trial Judge, was not in connection with collection of debt. The plain reading of the evidence indicate that it is.

### b) There was no actual finding of contempt.

Defendants allege purported undisputed facts 4, 5 and 7 which collectively completely and conclusively establish that word "contempt" was not used by anyone during pre-trial hearing or at trial, and that Court did not consider contempt of any kind, type or form. They also refer to the final Order which states, in pertinent part, that "[Babakaeva] was not intended to be a citation for a contempt under any Code section, Virginia Code 18.2-456 or any other".

Yet, in an unexplainable twist, defendants come to a conclusion, rebutting their own statements and defying the final Court Order, that "Babakaeva was actually found in contempt during pre-trial hearing". Defendants also use such contention throughout their Memorandum to substantially support other their statements. Such contention is not supported and actually completely defeated by defendants' own  alleged undisputed facts and to their own evidence.

### c) Defendants requested entry of contempt conviction.

Both drafts Judgment Orders that included false conviction were prepared by defendants and bear handwritten signature of Robert Quadros under statement "I ask for this". Defendants do not provide any reasons why it would be incorrect to state that defendants requested entry of these Orders.

Defendants do not produce any non-self-contradicting evidence in support of their purported defense against FDCPA claim that may warrant summary judgment.

17

## Defendants Maliciously Prosecuted Babakaeva

### 1. In causing conviction in contempt, defendnats acted intentionally and in bad faith

It is undisputed that the Court entered Order containing false conviction of contempt. As was shown in previous section, Babakaeva was falsely convicted in criminal contempt. The Judgment Order (Exhibit 9), on its face, is final appealable Order of the trial Court and, unless vacated, would be considered, for any purpose, to be valid criminal conviction. The only reason such conviction existed was that defendants prepared the draft Court Order, asked the Court to enter such Order, and submitted to the Court a copy that did not contain Babakaeva's objections. In doing so, defendants also filed to present to the Court and concealed from the Court the fact that they received from Babakaeva a copy of the Order that had her objections noted (Exhibit 8).

Defendants did not furnish Babakaeva with a copy of second draft Judgment Order bearing defendants endorsement, but submitted such copy to the Court for entry. Defendants had actual knowledge that no contempt conviction was announced or considered.

The whole defendants equivocation cannot defeat the simple fact that without any justifiable and/or decent reason, they submitted to the Court the draft Order with false conviction and without Babakaeva's objections, and got such Order entered. There is no other theory, consistent with the facts and evidence, other than that defendants acted intentionally, with utter disregard of rights of Babakaeva, with intention to harm.

### 2. Defendant had purpose and motif to persecute Babakaeva

In defending debt collection case, Babakaeva discovered that defendants regularly use facially defective, false and fraudulent affidavits to secure default judgments against large number of consumers. (See Defendants' Exhibit H to Memorandum, pp. 6-8; Exhibit 38 - some examples of anonymous affidavits using which defendants obtained default judgments). The deposition of the notary would establish that no "special agent" are making sworn statements[2].

---

[2] On request of defendants, the Newport News Circuit Court substantially modified and

To retaliate against Babakaeva and in attempt to deter exposure of such practice, defendants requested and obtained false conviction of criminal contempt.

There is sufficient evidence that will allow jury to reach verdict that defendants were liable for Babakaeva being falsely convicted in criminal contempt and that in seeking false conviction defendants acted with malice.

### Defendants Violated Babakaeva's Civil Rights

Defendants described in detail what due process requirements are for prosecuting a person for contempt of Court, including notice requirement, right to trial in open court by impartial tribunal. Particularly, defendants correctly state that the authority to bring a matter of contempt to the Court for prosecution is exclusively reserved to the State.

In this case, facially valid Court Order that contained conviction in contempt was entered. It was entered because defendants prepared, on their own initiative, a draft Order that included conviction of contempt and requested that the Court enter it, which is evidenced by the handwritten signature placed under the statement "I ask for this" and by correspondence related to scheduling of the hearing specifically on the matter of entry of the Order with conviction of contempt. The Court accepted such defendants' role in prosecuting contempt of Court, granted defendants request and entered Order as requested by defendants.

It was commonly held that "state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State", *see e.g. Jackson v.Metropolitan C., 419 U.S. 345 (1974) (citing Nixon v. Condon, 286 U.S. 73 (1932); Terry v. Adams, 345 U.S. 461 (1953); Marsh v. Alabama, 326 U.S. 501 (1946) ; Evans v. Newton, 382 U.S. 296 (1966)).*

---

extended the existing law on discovery procedures. Previously, Va. Code Ann. §8.01-271.1 was interpreted as not applicable to discovery conduct. Discovery sanctions were deemed proper only where an order regulating discovery was violated. Under new interpretation introduced by the Newport News Circuit Court, *pro se* party's merely requesting and serving court-issued witness subpoena on a witness named by the opposing party may be sanctionable pursuant to "admonishments" of opposing counsel.

Defendant assumed the role exclusively reserved to the State - the authority to bring to the Court charge of contempt against an individual. In doing so, defendants acted with utter and reckless disregard of Babakaeva's due process rights protected by the *Fourteenth Amendment*.

Therefore, jury will likely find that defendants liable for civil right violations committed in the course of falsely prosecuting Babakaeva for contempt of Court.

### Defendants are Liable for Malicious Use of Process and Abuse of Process

To demonstrate probable cause for attachment, defendant must show, among other things, that attachment creditor had a valid claim to the specific property sought to be attached. As was affirmatively stated by both the attachment creditor Schempf and stakeholder Wilson, Babakaeva was the rightful owner of the whole amount of Babakaeva's proceeds (see SGI 18). No portion of Babakaeva's proceeds was ordered to be used for satisfaction of Sinkine's debt. There is simply no place for a valid claim of any third-party to Babakaeva's proceeds (see SGI 16). As Babakaeva argues below and as evidence demonstrate, defendants knew that there was no proof as to Sinkine's ownership interest or claim to Babakaeva's proceeds, but defendants not only proceeded with attachment, but also attempted to use attachment proceedings to create such claim.

Significantly, the attachment case was initiated and prosecuted with a number of violations. Defendants instituted case for attachment against Sinkine for attachment of funds none of which belonged to Sinkine[3]. Defendants did not join indispensable co-defendant Wilson. Defendants simultaneously represented attachment plaintiff Schempf and indispensable statutory

---

[3]   The fact that defendants attempt to present as "undisputed material fact" allegation that Sinkine, during divorce proceedings, had some belief about a getting of a portion of Babakaeva's proceeds, once more proves one simple fact: defendants cannot show that any portion of Babakaeva's proceeds belonged to Sinkine. Instead of proof of certain legal rights concerning ownership of property that could be material to this case, defendants introduce a hearsay-type third-party statement about Sinkine's state of mind at an unidentified time during pendency of divorce proceedings. Defendants omitted to present any showing that the Court should be concerned about such matters.

co-defendant Wilson. Defendants filed bad bond which did not conclude condition to pay all costs and damages which may be awarded against plaintiff or sustained by any person by reason of wrongful seizure, as required under Va Code Ann. § 8.01-537.1, but was payable only to Sinkine.

Knowing that Babakaeva was beneficiary of the funds (see SGI 22), defendants clearly did not act in good faith by not providing Babakaeva with notice of attachment and by not making any attempts to mitigate her damages. Moreover, defendants objected to Babakaeva's intervention[4].

Upon voluntary dismissal of attachment, the aggrieved parties entitled to award of damages *J. I. Case v. United, 232 Va. 210 (1986). (See also Am.J. 2D Attachment § 579).* Abandonment of the attachment or return of property does not relieve the attaching party from liability for the wrongful attachment. Defendants' contention that Babakaeva was discretionary party does not release them from liability. It is uniform principle based on fundamental right that "prejudgment attachment violates due process if the <u>owner of the property attached</u> has not had prior notice of attachment and an opportunity at a meaningful time to be heard concerning whether attachment would arbitrary or unfairly deprive the owner of the property, *Am.J. 2d, Id.*

Further, defendants' contention that wrongful attachment cannot be ground for both malicious prosecution and abuse of process claims is misplaced. Indeed, the fact that defendants attached all of Babakaeva's property without having valid claim to any part of it does not and cannot negate the fact that defendants intended, and actually attempted, to utilize the attachment proceedings with the purpose to transfer interest in Babakaeva's proceeds to Sinkine with the

---

[4] Defendants frivolous objection to Babakeva's intervention was overruled. Defendants Motion to remand was defeated by Babakaeva and was denied by the Federal Court. Nevertheless, defendants complain that "Babakaeva unnecessarily inserted herself into proceedings" and removed action to the Federal Court, in essence, defendants ridicule the adverse rulings of the State and Federal Court.

eventual goal to procure payment to Schempf. Such transfer was not possible to achieve by

Court's action after divorce was finalized. The transcript of November 17 (Exhibit 26) hearing

shows that: defendants had actual knowledge that none of Babakaeva's proceeds belonged to

Sinkine; they wanted Schempf to be paid from Babakaeva"s proceeds anyway; they discussed

with the Court the options to create Sinkine's interest in Babakaeva's funds, including coercing

Sinkine to make a claim to Babakaeva's proceeds under threats of Sinkine's arrest and

incarceration for a year. Moreover, defendants attempted to obtain Court Order that would

instruct Wilson to hold Babakaeva's proceeds "for the benefit and use of Sinkine" (Exhibit 26,

p.21 at 20:21 and Exhibit 37), without mentioning Babakaeva's ownership interest at all, thus

attempting to accomplish transfer of interest in the funds from Babakaeva to Sinkine.

Attachment proceedings are clearly not designed for such purposes. Therefore, the necessary

elements of the cause of action for abuse of process are satisfied.

Interestingly, the case on which defendants mainly rely, *Ross v. Peck Iron & Metal Co.,*

*264 F.2d 262 (1959),* actually completely disproves defendants' position. The quotations from

*Ross* sound supporting defendants' position until one actually compares the circumstances of

*Ross* with the facts in this case, and accordingly applies law of *Ross* to the facts of this case. In

*Ross,* defendants instituted attachment against Ross for money belonging to Ross on the ground

that Ross was indebted to defendants, served Ross and indispensable co-defendants with notice

of attachment proceedings, sued out attachment and eventually obtained judgment against Ross

on the underlying claim which judgment was paid from the attached funds. Ross alleged that the

attachment was wrongful because the amount of judgment was incorrect and that the debt was

not due. The Court ruled that because the judgment was rendered against Ross and was paid

from attached proceeds and that the amount attached was even not enough to satisfy the

judgment, the attachment was not wrongful. The court specifically addressed the arguments that

attachment would be wrongful if, for example, the judgment were not satisfied from attached funds.

In this case, defendants instituted case for attachment against Sinkine for attachment of Babakaeva's proceeds none of which belonged to Sinkine, did not provide notice to Babakaeva and did not join indispensable co-defendant Wilson; defendants filed defective bond; defendants admitted to not having proof of Sinkine's ownership of any portion of attached Babakaeva's proceeds, withdrew and never re-instituted attachment claim, did not started to prosecute the underlying claim against Sinkine before dismissal of attachment; Babakaeva eventually obtained the whole amount of attached funds so none of the portions of judgment was to be satisfied by payment from the attached funds, and was not actually satisfied from the attached funds. Defendants attempted to transfer beneficiary interest to Babakaeva's proceeds to Sinkine within the attachment case under disguise of other purpose. By application of the legal argument and the law of *Ross* to the circumstances of this case, defendants are plainly guilty of wrongful attachment, malicious prosecution and abuse of process. Particularly, malice on the part of defendants is evidenced by the attachment of the whole amount of Babakaeva's proceeds, even after their client protested to their reckless and frivolous claim, which protest they also disregarded.

## Defendants Converted Babakaeva's Money

Defendants incorrectly contend that Babakaeva cannot demonstrate damages because, as defendants purport, in absence of attachment Wilson would not release Babakaeva's proceeds anyway. This contention is wrong, as defendants' own exhibits show.

First, in case of wrongful attachments damages are presumed, *Am.J.2d, Attachments.*

23

Second, in support of the complaint for attachment defendants submitted sworn affidavit, and made attachment case on the ground of that affidavit, stating that Babakaeva is about to get possession of Babakaeva's proceeds' and to remove from the Commonwealth. Such statement was a mandatory ground for suing out attachment. Defendants attached the full amount of Babakaeva's proceeds on that very ground, which was in fact the only valid ground for attachment. After successfully using that argument in attachment case, defendants now completely reverse their position and argue exactly opposite, that Babakaeva was not about to take possession of Babakaeva's proceeds. Switching a position after successfully using it is precluded by judicial estoppel and therefore should not be allowed. Further, Wilson surrendered Babakaeva's proceeds after Babakaeva sued Wilson, while no Court had touched any issues related to Babakaeva's proceeds except in attachment case. Clearly, if not for attachment lawsuit Babakaeva would have obtained money a year and a half earlier[5]. Babakaeva sustained damages due to loss of use of Babakaeva's proceeds during the time the funds were wrongfully attached by defendants.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary judgment should be denied.


Respectfully submitted,


*Tatyana Babakaeva*

Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 967-7711

---

[5]  Even if Wilson failed to surrender money, Babakaeva would have  sued Wilson and would have obtained money through interpleader, exactly as it happened in 2010.

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2012 I hand delivered a true and accurate copy of the foregoing Memorandum to

Mary T . Morgan, Esq.
Cooper, Spong & Davis, P.C.
200 High Street, Suite 500
Portsmouth, Virginia 23704
*Counsel for Defendants Robert P. Quadras,*
*Raymond Bacon and Quadras & Associates,P.C.*

*Tatyana Babakaeva*

Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 967-7711