# Exhibit 26

```
 1   V I R G I N I A:
        IN THE CIRCUIT COURT FOR THE CITY OF NEWPORT NEWS
 2
 3   --------------------------------
 4   JONES, BLECHMAN, WOLTZ & KELLY,
 5                    Plaintiff,
 6        vs.                        CASE NO. CL0801064V-04
 7   NIKOLAI I. SINKINE,
 8                    Defendant.
 9   --------------------------------
10
11   BEFORE:  The Honorable H. Vincent Conway, Jr., Judge
       DATE:  November 17, 2008
12
13                      ----oOo----
14
15   APPEARANCES:  RAYMOND BACON, ESQ.
                   Quadros & Associates
16                 2715 Huntington Avenue
                   Newport News, Virginia  23607
17                 Counsel on behalf of the Plaintiff

18                 TATYANA A. BABAKAEVA, ESQ.
                   Pro Se
19
20
21   Reported by:  Melissa S. Magera
22
23
24                                              ORIGINAL
25
```

1  relationship of the parties, any other divisions. And under
2  20-103 or 107.3, you would have to consider what occurred in
3  the divorce matter, which is a little bit different than a
4  partition matter. But I don't understand from the consumer
5  standpoint why we can't aim forward for some resolution.
6  Even your client wants to know. So how do we get there from
7  here?
8  　　　　　　　MR. BACON: May I suggest that to make it
9  nice and neat at least what is already entered, her motion,
10  grant her motion.
11  　　　　　　　THE COURT: Yes. I think she has an
12  interest. She claims she has an interest in all of the
13  funds, that your client has no interest or the husband has
14  no interest. So certainly she is a critical party.
15  　　　　　　　MR. BACON: I don't have a problem with
16  that. The motion that I filed, can this matter be continued
17  so that we can file a motion in Hampton to transfer
18  everything to this court? And I think that should make
19  everybody happy.
20  　　　　　　　THE COURT: I don't know if it will make
21  anyone happy, and I have no personal interest --
22  　　　　　　　MR. BACON: I understand that.
23  　　　　　　　THE COURT: -- in saying this court. But
24  tell me some other way we could get this moving. I mean, I
25  would like to say -- Hampton is still using substitute

```
 1    I think she would sign the order.
 2              MR. BACON:  I can simultaneously circulate
 3    an order, a proposed agreed order.
 4              THE COURT:  I guess you would have to.
 5              MR. BACON:  And at the same time have them
 6    served.  And hopefully he'll default and then we'll have to
 7    set a default hearing in Hampton.
 8              THE COURT:  I think he probably will
 9    because -- well, I mean, practically, it's almost irrational
10    to think of him taking a position one way or another because
11    nothing is happening.  But the other thing I want to guard
12    against in this is she should get the money that she's
13    entitled to, Jones, Blechman should get the money it's
14    entitled to.  And that involves an analysis of the interest
15    of the property of the source of funds.  But there is also a
16    great opportunity for fraud or constructive fraud in a case
17    like this.  Because the husband could take the position I
18    have no interest.  And to do that would be to defeat one
19    side.  And the funds would end up with his former wife.  And
20    so his involvement or at least the notice may be rather
21    critical.  And if it comes down to it, if his involvement is
22    critical and my analysis is correct, then we will get him
23    here.  And if I have to arrest him, we will do that.  But I
24    don't think by his silence he can cheat an attachment.  Now,
25    if he wants to testify under oath and risk jail for a year
```

```
 1   and commit perjury that he has no interest in the funds,
 2   then at some point you have to deal with that. But if he
 3   just doesn't say a word, and her testimony is that he has no
 4   interest in the funds, then she prevails unless we somehow
 5   get information from him or the facts indicate that that's
 6   not correct. And it's going to be very difficult, will it
 7   not, without his participation?
 8              MR. BACON: I don't know. It's --
 9              THE COURT: You think you can establish his
10   interest without his participation?
11              MR. BACON: Well, let's assume he has no
12   interest. It's not proper to have a tenants of the entirety
13   anymore so --
14              THE COURT: Well, in a technical sense it
15   is. Because if that classification follows the money it
16   cannot now -- it is not now subject to the liens of either
17   party because they each have an undivided interest in the
18   whole. Someone has to make the interest divisible.
19              MR. BACON: If the nature of the property is
20   still tenants by the entirety, yes.
21              THE COURT: Correct.
22              MR. BACON: Otherwise, it's a pot of money
23   and whoever can get access to it legally I would think it
24   would be theirs. Pretty much like a joint bank account
25   that is being garnished but not tenants by the entirety. So
```

to not give it to anybody until further order, either this Court or Hampton.

THE COURT: Let me see the order. That sounds like you're saying they're the funds of the husband, and I'm not sure that's what the Circuit Court of Hampton did or if Hampton said -- see, I can't --

MR. BACON: But since we filed the motion to give this Court jurisdiction, that order is just to answer this Court's previous order. It does not touch what Hampton has done because --

THE COURT: Well, but the bottom line is you want him to hold all these funds, correct?

MR. BACON: Yes.

THE COURT: Consistent with what the Circuit Court of Hampton says.

MR. BACON: That's what we would like.

THE COURT: I have ordered him to transfer all of the funds to the Circuit Court.

MR. BACON: Right.

THE COURT: This says that he is to hold the funds for the use and benefit of Mr. Sinkine.

MR. BACON: I can either redo it -- but since this Court ordered him to transfer all the funds to this Court, we're asking this morning that this Court hold that order to abeyance or amend that order as to what this

```
1    would be the first one to try to resolve it, and I would say
2    Dear Judges -- address it to both -- what do you want me to
3    do?  And get out of it.  And so it's a little bit surprising
4    I haven't heard a formal response from him that we don't
5    have any money.  I have a question possibly about fees due
6    him.  And so we need to go ahead and resolve it, get the
7    matter over here.  I think when the matter comes over here I
8    will put the funds with the clerk to at least resolve any
9    questions right there and find out.  And then we ought to go
10   ahead and resolve it.  And, you know, there's something to
11   say for some decision right or wrong, make some decision and
12   then let the parties appeal it.
13                MR. BACON:  For the record, as the Court
14   instructed me to, we did serve the Wilson's with notice of
15   this Court's previous order.  And no motion to intervene or
16   anything to my knowledge has been filed.
17                THE COURT:  And it could be that they don't
18   believe they really have a dog in this fight.  How is it
19   that the funds got to Mr. Wilson?  Was he involved in the
20   real estate?
21                MR. SCHEMPF:  The parties had agreed that he
22   would hold it.
23                THE COURT:  The parties had agreed?  All
24   right.
25                MR. SCHEMPF:  After the marital house was
```

```
 1    sold, there was a partial distribution to both parties.  The
 2    remaining balance by agreement of the parties was held in a
 3    trust account by Mr. Wilson.
 4                    THE COURT:  And Mr. Wilson was selected how,
 5    because he was involved in the real estate?
 6                    MR. SCHEMPF:  He was then representing
 7    Ms. Babakaeva.
 8                    THE COURT:  He was?
 9                    MR. SCHEMPF:  At that time.
10                    THE COURT:  At that time?  Could that about
11    "our fees" have something to do with fees due from her to
12    the Wilson's?
13                    MR. SCHEMPF:  My understanding is that there
14    is an arrearage.
15                    THE COURT:  Okay.  All right.  But he has
16    not filed an attachment --
17                    MR. BACON:  No.
18                    THE COURT:  -- to date?
19                    MR. BACON:  To date.
20                    THE COURT:  And from an estoppel standpoint,
21    it's getting a little bit late here to wake up at the end of
22    this and say oh, by the way.  So we shall see.  Yes, ma'am?
23                    MS. BABAKAEVA:  No.  I have this agreement
24    if you need it.
25                    THE COURT:  That agreement is what?
```

```
 1                    MS. BABAKAEVA:  How funds --
 2                    THE COURT:  How funds got to be
 3     Mr. Wilson's?
 4                    MS. BABAKAEVA:  Yes.
 5                    THE COURT:  Are you of the opinion that you
 6     continue to owe Mr. Wilson money for attorney's fees?
 7                    MS. BABAKAEVA:  No.
 8                    THE COURT:  You don't think you do?  All
 9     right.  "Each party to receive a check in the amount of
10     28,000.  The balance to be wired to the trust account to be
11     held pending equitable distribution."  All right.  That
12     seems pretty clear.  Now, this is the reason he has the
13     funds?
14                    MS. BABAKAEVA:  Yes.
15                    THE COURT:  That's not a Circuit Court order
16     of Hampton.
17                    MR. BACON:  No, it's not.
18                    THE COURT:  Well, when a Circuit Court
19     orders him to transfer these funds to the clerk's office --
20     the reason for today's hearing is what?  I thought that the
21     Circuit Court of Hampton said one thing, this Court said
22     another.  It makes it very awkward for Counsel.
23                    MR. BACON:  Right.  The Hampton Court
24     ordered to pass up to --
25                    THE COURT:  That reserved a motion for
```

```
 1    referral.
 2              MR. BACON: So theoretically, had that case
 3    moved forward, the Hampton Court might have made an order.
 4              THE COURT: It might have made an order?
 5              MR. BACON: No, there would have been an
 6    order, but that order might have separated the funds in a
 7    way that I guess would have put the Wilson's in a precarious
 8    situation. It may have said give -- you are ordered to give
 9    $2 to one party or the other, and then Paul Wilson would not
10    have been able to honor that because of the entirety -- of
11    all the funds would have been in this court.
12              THE COURT: But the Circuit Court of Hampton
13    never recognized Paul Wilson as the trustee, right? The
14    only reason he has the money is the agreement of the
15    parties. I mean, do you -- correct me.
16              MR. BACON: Yes, that is correct. I read
17    Hampton's order.
18              THE COURT: I mean, the fact that the
19    Circuit Court says I don't know what to do about equitable
20    distribution, we're going to have to do this in the future,
21    really has nothing to do with an agreement of the parties
22    that gives the funds to Mr. Bacon or to Mr. Wilson. And
23    then another Court says I want those funds secured in a
24    clerk's office until they're divided. Now, the argument
25    could -- I mean, I don't see that the Circuit Court gave
```

1  Mr. Wilson the funds. The parties did.

2  MR. SCHEMPF: No. The funds were already in
3  Mr. Wilson's custody by agreement of the parties. But at
4  the equitable distribution hearing it was clearly recognized
5  and I think stated several times on the record that
6  Mr. Wilson was holding those funds in his trust account
7  until such time as the Court made a determination. I mean,
8  that was one of the major issues at the equitable
9  distribution hearing. Your motion, Mr. Bacon, says that it
10 is the understanding of Counsel for the Plaintiff that this
11 Court's order in Newport News would cause Paul Wilson to
12 violate an order of the Circuit Court of Hampton.

13 MR. BACON: Yes, sir.
14 THE COURT: Do you think that's correct.
15 MR. BACON: It was my understanding that --
16 THE COURT: Well, is it still your
17 understanding?
18 MR. BACON: No. Technically, no. But as
19 Mr. Schempf just said, I think that -- well, it's my
20 understanding --
21 THE COURT: That the parties thought that he
22 was holding it. And they haven't resolved that issue. But
23 what is the problem, Mr. Schempf, if the Circuit Court of
24 Newport News says put them with the clerk until this matter
25 is resolved? Are you saying that you understand

```
 1    Mr. Wilson's position that the Circuit Court of Hampton
 2    thought he had them so he feels uncomfortable?
 3                   MR. SCHEMPF:  Judge, I can't speak to that.
 4    I've not had any conversations with Mr. Wilson.
 5                   THE COURT:  Another question.  Why is this
 6    your problem?  Isn't it Mr. Wilson's problem?  I mean --
 7                   MR. BACON:  Yes.
 8                   THE COURT:  -- suppose this Court says
 9    notwithstanding any feelings, get the funds to the clerk of
10    this court immediately, his position is what?  The Circuit
11    Court of Hampton didn't order him to retain them.  They're
12    not going anywhere subject to court order.  He could take
13    the position that Hampton could come out tomorrow and say
14    divide the funds this way.  And maybe he's taking the
15    position it could be in conflict with what the Newport News
16    Circuit Court is doing.  But this Court really can't rule
17    until the funds are divided.
18                   MR. BACON:  I agree.
19                   THE COURT:  What has been the contact --
20    Mr. Wilson must have contacted and asked you to do this.
21    Did he say that the Court in Hampton ordered him to keep
22    them?
23                   MR. BACON:  I've had one or two
24    conversations with Mr. Wilson.  And it was my understanding
25    from speaking to him that he felt that Hampton placed him in
```

```
 1    a position through a technical order or otherwise to hold
 2    the funds.  He has had most of his conversations with
 3    Mr. Quadros who has then spoken to me.
 4                 THE COURT:  So you could know that your name
 5    is being used as a trustee, and then some other jurisdiction
 6    says give me the funds.  And you say look; Hampton thinks I
 7    have the funds.  So we're going to resolve this.  If we take
 8    Hampton out of the picture and get it to Newport News, then
 9    he doesn't have a conflict.  Then we'll get the funds here.
10    Do you agree?
11                 MS. BABAKAEVA:  Yes, I agree that they
12    should transfer the funds here.
13                 THE COURT:  All right.  Well, let's do it
14    nicely.  Let's get the case transferred.  Then we'll get the
15    money transferred.  And then I need to talk with you-all
16    creatively.  How best to resolve this?  I don't want to
17    waste your time, but if we want to use someone like Wayne
18    Moore, we're going to have to pay him.  If we want to just
19    put the evidence on before the Court -- I hate to go to an
20    accountant or a CPA and spend additional funds.  Until you
21    convince me otherwise, I'm not sure that it's that
22    complicated and that this Court can't resolve it after
23    listening to it.  Although I'm still curious how you're
24    going to get the evidence from Mr. Sinkine, but I'll leave
25    that to you.
```

being in the account originally. Then some funds being withdrawn while simultaneously Ms. Babakaeva was depositing some funds. So there's going to be a question of what the amount of Mr. Sinkine's interest is in those funds and then apply the Brandenburg formula.

THE COURT: Which were put into the home?

MR. SCHEMPF: Correct.

THE COURT: All right.

MR. BACON: Your Honor, I don't imagine that once this Court has all -- once Hampton has transferred the entire matter, maybe Your Honor can look at the transcript and then refer --

THE COURT: I mean, there must be a range of responses. Assuming it's most favorable to the Plaintiff, the range is X. And if it's most favorable to the wife, the range is Y. Do you know what that is now? I mean, is there a difference here depending on how we approach this of 20,000 or 30,000 or what?

MR. SCHEMPF: Judge, I don't have the numbers anymore. I remember this was a -- this hearing lasted all afternoon. And it was fairly document intensive. And finally, Judge Andrews, after listening to some of the testimony, adjourned the hearing, called counsel into his chambers and recommended that he thought that the parties should reach a settlement. And I thought that we had, but

unfortunately the terms of the settlement were not stated on the record.

THE COURT: Right.

MR. SCHEMPF: So we didn't have anything that was binding. So when it came time to actually present the order, then Ms. Babakaeva decided to withdraw from the agreement.

THE COURT: All right. And is that still your position, ma'am? There has been no settlement regarding these funds; is that correct?

MS. BABAKAEVA: Yes.

THE COURT: When he talks about his belief that a settlement was reached, do you know what he's talking about? Was there some discussion of a settlement?

MS. BABAKAEVA: No.

THE COURT: There was no discussion of a settlement?

MS. BABAKAEVA: No.

THE COURT: Were you represented by Mr. Wilson at that time?

MS. BABAKAEVA: Uh-huh.

THE COURT: And he never talked to you about a possible settlement?

MS. BABAKAEVA: He talked to me, but I did not agree.